[Cite as *Maternal Grandmother v. Hamilton Cty. Job & Family Servs.*, 2020-Ohio-1580.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| MATERNAL GRANDMOTHER, as Administrator of the Estate of G.B., a deceased minor, | : | APPEAL NO. C-180662<br>TRIAL NO. A-1701739 |
| and | : | *O P I N I O N.* |
| MATERNAL GRANDMOTHER, Individually, | : |  |
|  | : |  |
| Plaintiffs-Appellants, | : |  |
| vs. | : |  |
| HAMILTON COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES, | : |  |
| HAMILTON COUNTY, OHIO, | : |  |
| DENISE DRIEHAUS, | : |  |
| CHRIS MONZEL, | : |  |
| TODD PORTUNE, | : |  |
| SHAMARA STEPHENS a.k.a. SHAMARA HOOKS-WARE, | : |  |
| KASSIE SETTY, | : |  |
| and | : |  |
| LUMADI LAVUSA, | : |  |
| Defendants-Appellees, | : |  |
| and | : |  |
| FATHER OF G.B., | : |  |
| and | : |  |
| MOTHER OF G.B., | : |  |
| Defendants. | : |  |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: April 22, 2020

*Law Offices of Blake R. Maislin*, *Randy A. Byrd* and *Blake R. Maislin*, for Plaintiffs-Appellants,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Pamela J. Sears*, *Michael Florez* and *Andrea B. Neuwirth*, Assistant Prosecuting Attorneys, for Defendants-Appellees Hamilton County Department of Job and Family Services, Hamilton County, Ohio, Denise Driehaus, Chris Monzel, Todd Portune and Lumadi Lavusa,

*Michael L. Tranter*, and *Laufman & Napolitano, LLC*, and *Paul M. Laufman*, for Defendant-Appellee Shamara Stephens, a.k.a. Shamara Hooks-Ware,

*Stephen J. Wenke*, for Defendant-Appellee Kassie Setty.

**MOCK, Presiding Judge.**

{¶1}     The trial court did not err when it granted the motions of Hamilton County, the Hamilton County Commissioners, the Hamilton County Department of Job and Family Services ("HCJFS") and its employees for judgment on the pleadings for the claims of wrongful death and related claims brought on behalf of the estate of a child who died in the custody of her parents.

### Child's Murder by Parents
### Leads to Litigation

{¶2}     G.B. was born in January 2013.  She was immediately taken into the custody of the defendant-appellee HCJFS because of previous issues with defendant mother and defendant father.  Mother participated in services and the Hamilton County Juvenile Court granted temporary custody of G.B. to mother in September 2013, while HCJFS retained protective custody of G.B.  HCJFS's protective custody was terminated two months later as mother continued to comply with court orders.

{¶3}     In December 2014, mother brought G.B. to Cincinnati Children's Hospital Medical Center ("CCHMC").  As a result of that visit, officials from CCHMC reported to HCJFS that they suspected that G.B. was being abused.  HCJFS sent a caseworker to investigate the home on March 4, 2015.  On March 25, mother again brought G.B. to CCHMC, where she was pronounced dead.  After a police investigation and subsequent prosecutions, G.B.'s father was convicted of aggravated murder for causing her death and was sentenced to the death penalty.  G.B.'s mother was also convicted of murder and sentenced to 15 years to life in prison.  At the time of her death, G.B. was in the custody of her mother, and HCJFS was not actively involved with the family.

{¶4}     Plaintiff-appellant maternal grandmother filed a wrongful-death complaint and related survivorship claims on behalf of the estate of G.B. and herself

personally (collectively "the appellants"). The suit named HCJFS, defendant-appellee Hamilton County, Ohio, and defendants-appellees Hamilton County Commissioners Denise Dreihaus, Chris Monzel, and Todd Portune. Additionally, the suit named defendants-appellees Shamara Stephens a.k.a. Shamara Hooks-Ware, Kassie Setty, and Lumadi Lavusa as individuals employed by HCJFS as caseworkers.

{¶5} That complaint was subsequently amended, naming the same parties. The amended complaint set forth a number of allegations relating to the culpability of the defendants-appellees and defendants in the death of G.B. The document alleged that G.B. had been returned to mother by the juvenile court because "upon information and belief, the information provided by the Defendant Caseworkers was unreliable and was a product of the Caseworkers; own neglect, reckless misconduct and/or wanton misconduct." It further stated that protective supervision had been improperly terminated by HCJFS and that G.B. had been allowed to return to the home of mother, where father had been also residing. Father, the amended complaint alleges, had not complied with the requirements placed upon him by the agency. The termination of the protective order had been "done in bad faith, in a willful and wanton manner, and resulted in the deprivation of the civil rights of the infant G.B. and ultimately in her wrongful death."

{¶6} As it relates to G.B.'s visit to CCHMC, the amended complaint alleged that the caseworkers had been called to the hospital as a result of concerns expressed by hospital staff. It claimed that "during that time, [HCJFS] took no action and allowed [mother] to take [G.B.] home * * * [d]espite these obvious and egregious signs of abuse and neglect." It further stated that, though HCJFS had made a follow-up visit to the home, the visit "should have resulted in a report of abuse."

{¶7} The amended complaint also alleged that certain county employees made statements that could be attributed to the county. It alleged that the Hamilton

4

County coroner had stated that G.B. had been beaten, tortured, and starved "her entire pathetic, pathetically short life." The amended complaint further claimed that the head of HCJFS had admitted that the caseworkers "did not follow procedures," and that the Hamilton County prosecuting attorney had stated that mother "should never had had kids, let along gotten this poor girl back."

{¶8} The amended complaint further alleged that the caseworkers had "failed to inspect the home of [mother and father], which was unsuitable for a placement of [G.B.]." It claimed that the caseworkers "provided false and fraudulent reports to persuade the Juvenile Court to order the infant [G.B.] be placed back with the parents on or about September 20, 2013, after having previously removed the infant from the home and placed her in foster care where she was doing well." It stated that the caseworkers had failed to report signs of abuse or follow up with CCHMC personnel "regarding clear and obvious signs of abuse and neglect." The amended complaint finally alleged that the caseworkers had engaged in "gross misconduct and egregious mishandling of the infant's placement and care."

{¶9} While the amended complaint makes allegations in different ways throughout the pleading, the claims can be summarized as asserting that the caseworkers had: (1) failed to properly inspect the home of G.B.'s parents; (2) provided false and fraudulent reports to persuade the juvenile court to place G.B. back with her parents; (3) failed to properly report signs of abuse; (4) failed to follow up with CCHMC's personnel regarding clear and obvious signs of abuse and neglect and failed to take action before G.B. was released home; and (5) failed to report abuse to G.B. and to have the child removed from the parents' home.

{¶10} Hamilton County, the county commissioners, HCJFS, Lavusa, Stephens, and Setty filed motions for judgment on the pleadings claiming that they were entitled to immunity for the claims in the amended complaint. The trial court

granted the motions and dismissed the claims against all defendants except G.B's parents. The appellants have appealed that decision in one assignment of error.

**Motion for Judgment on the Pleadings**

{¶11} In one assignment of error, the appellants claim that the trial court erred in granting the motions for judgment on the pleadings of the county, the county commissioners, HCJFS, Lavusa, Stephens, and Setty. This court has recently set forth the standard of review for cases in which a trial court has dismissed claims based on sovereign immunity pursuant to Civ.R. 12(C).

We review de novo a trial court's ruling on a Civ.R. 12(C) motion for judgment on the pleadings. *Waldman v. Pitcher*, 2016-Ohio-5909, 70 N.E.3d 1025, ¶ 15 (1st Dist.). We must accept all material allegations in the nonmoving party's complaint as true and must construe all reasonable inferences in that party's favor. *Id.* The motion should only be granted if it appears beyond doubt that the nonmoving party cannot prove any set of facts entitling her to relief. *Id.*

A trial court may grant a motion for judgment on the pleadings on the basis of an affirmative defense such as immunity where the complaint bears conclusive evidence that the action is barred by the defense. *Bucey v. Carlisle*, 1st Dist. Hamilton No. C-090252, 2010-Ohio-2262, ¶ 9. So "unless the pleadings 'obviously or conclusively establish[ ] the affirmative defense,' a court may not grant a motion for judgment on the pleadings." *Harris Farms, LLC v. Madison Twp. Trustees*, 4th Dist. Scioto No. 17CA3817, 2018-Ohio-4123, ¶ 18,

quoting *Cristino v. Bur. of Workers' Comp.*, 2012-Ohio-4420, 977 N.E.2d 742, ¶ 21 (10th Dist.). *Steele v. City of Cincinnati*, 1st Dist. Hamilton No. C-180593, 2019-Ohio-4853, ¶ 14-15.

**Immunity for the Agency Defendants**

{¶12}   We will first address the question of the immunity of the county, the county commissioners, and HCJFS.   Immunity for government agencies is determined in a three-step process.  The first tier of the analysis in R.C. Chapter 2744 establishes the defense of sovereign immunity for political subdivisions. The next carves out certain exceptions to immunity where liability may still be imposed. Finally, if the claim satisfies one of the exceptions, the third tier delineates those defenses that may be asserted against liability. *See Franks v. Lopez*, 64 Ohio St.3d 345, 347, 632 N.E.2d 502 (1994).

{¶13}   First, "[t]he general rule is that * * * immunity applies to shield the exercise of governmental or proprietary functions [by a political subdivision] unless the injured party is entitled to rely on one of the exceptions specifically recognized by statute." *Nungester v. Cincinnati*, 100 Ohio App.3d 561, 565, 654 N.E.2d 423 (1st Dist.1995).  The parties concede that Hamilton County is a political subdivision and that engaging in the protection of children through HCJFS is a governmental function.  *See* R.C. 2744.01(C)(2)(m); *Rankin v. Cuyahoga Cty. Dept. of Children and Family Servs.*, 118 Ohio St.3d 392, 2008-Ohio-2567, 889 N.E.2d 521, ¶ 16.

{¶14}   Once immunity has been established, the next step is to determine whether there is an exception that would reimpose liability.  R.C. 2744.02(B) lists five express exceptions to the general grant of immunity:

    (1)   the negligent operation of a motor vehicle by an employee;

(2)   the negligent performance of proprietary functions;

(3)   the failure to keep public roads open and in repair;

(4)   the negligence of employees occurring within or on the grounds of certain buildings used in connection with the performance of governmental functions; and

(5)   the express imposition of liability by statute.

{¶15}   None of these exceptions apply in this case. In fact, in their brief, the appellants only argue that HCJFS is liable to the extent their employees are liable. The appellants claim that the agency defendants therefore cannot be dismissed from the action, citing *Elliott v. Cuyahoga Cty. Executive & Council*, 8th Dist. Cuyahoga No. 105773, 2018-Ohio-1088. But that decision does not stand for this proposition. In that case, the county of Cuyahoga admitted that it would remain a party even if the county itself was not liable, as long as its employees remained in the suit in their official capacities. *Id.* at ¶ 27. Thus, the court concluded that "we need not reach the question of whether the county must be retained as a party to an action for purposes of R.C. 2744.07 where the immunity of the codefendant employees is in question." *Id.* And the case that *Elliott* cited, *Lambert v. Hartman*, 517 F.3d 433 (6th Cir.2008), did not even address immunity claims. *See Lambert* at 428 (because the case was dismissed on the merits, the court saw "no need to address the Defendants' immunity arguments.").

{¶16}   There is no provision within R.C. 2744.01 et seq. that would allow a governmental entity to be retained in a lawsuit, absent a cognizable cause of action for which no immunity applies. The trial court properly determined that the agency defendants were entitled to immunity and that their motions for judgments on the pleadings were properly granted. We therefore turn to the analysis of the claimed immunity of Lavusa, Stephens, and Setty.

**Immunity for HCJFS Caseworkers**

{¶17} The determination of immunity for government employees is governed by R.C. 2744.03(A)(6). That sections states that

In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:

(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee.

{¶18} On appeal, the appellants claim that the trial court erred in granting the motion for three reasons: (1) the caseworkers owed G.B. a duty to protect her while she was in the custody of HCJFS, (2) the caseworkers breached their duty to investigate the circumstances surrounding abuse or suspected abuse reported by

CCHMC, and (3) the caseworkers acted recklessly, wantonly, maliciously, or in bad faith. We will discuss each argument in turn.

**Duty to Protect While in Custody**

{¶19} In the first portion of their argument, the appellants claim that the caseworkers breached their duty "in the context of the reports and information that the County and individual caseworkers provided to the juvenile court that resulted in the juvenile court ordering G.B.'s return to her mother." The appellants claimed that the reports were "unreliable" and that they were "the product of the caseworkers' neglect, reckless misconduct, willful misconduct, and/or wanton misconduct." Further, in the amended complaint, plaintiffs-appellants averred that the reports were false or fraudulent.

{¶20} When a caseworker provides information to a juvenile court for the purpose of assisting the juvenile court in making a child-custody decision, that conduct is entitled to immunity. As the Sixth Circuit set forth,

> "[U]nder certain circumstances, social workers are entitled to absolute immunity." The scope of this immunity is akin to the scope of absolute prosecutorial immunity, which applies to conduct "intimately associated with the judicial phase of the criminal process," As this Court previously has described:
>
> > The analytical key to prosecutorial immunity * * * is advocacy—whether the actions in question are those of an advocate. By analogy, social workers are absolutely immune only when they are acting in their capacity as legal advocates—initiating court actions or testifying under oath—not when they are performing

10

administrative, investigative, or other functions. The case before us turns on whether the actions of which [the plaintiff] complains were taken by [the defendant social worker] in her capacity as a legal advocate.

(Citations omitted.) *Pittman v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 640 F.3d 716, 724 (6th Cir.2011). And this immunity remains in place even if, as the appellants alleged in the amended complaint, intentional misrepresentations are made. The *Pittman* court went on to conclude that

[P]rosecutors do not forfeit their absolute immunity *when they knowingly make false statements* while advocating before the court: "Like witnesses, prosecutors and other lawyers were absolutely immune from damages liability at common law for making false or defamatory statements in judicial proceedings (at least so long as the statements were related to the proceeding), and also for eliciting false and defamatory testimony from witnesses." Because absolute immunity for social workers is akin to absolute immunity for prosecutors, the same protection must apply here, no matter how undesirable the results. In the words of Chief Judge Learned Hand, absolute immunity represents "a balance between … evils"; "[I]t has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation."

(Emphasis added.) *Id.* at 724-725. Because the statements made to the juvenile court by the caseworkers had been made while acting in their capacity as legal advocates, they are entitled to absolute immunity. *See Bauch v. Richland Cty. Children Servs.*, 6th Cir. No. 17-3435, 2018 WL 2338906 (May 23, 2018) (social

worker entitled to absolute immunity for statements made in document submitted to juvenile court for purposes of triggering child-removal proceedings).

{¶21} But even if the caseworkers were not entitled to immunity for communications made to the juvenile court in the aid of a child-custody determination, the allegations in the complaint are insufficient to establish that plaintiffs-appellants are entitled to relief. Unsupported conclusions of a complaint are not sufficient to survive a motion to dismiss. *State ex rel. Hickman v. Capots*, 45 Ohio St.3d 324, 544 N.E.2d 639 (1989). As the Eighth District reasoned:

> While a complaint attacked by a * * * motion to dismiss does not need detailed factual allegations, the [plaintiffs'] obligation to provide the grounds for their entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level. Conclusory statements in a complaint that are not supported by facts are not afforded the presumption of veracity and are insufficient to withstand a motion to dismiss. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations to survive a motion to dismiss.

(Citations omitted.) *DiGiorgio v. Cleveland*, 8th Dist. Cuyahoga No. 95945, 2011-Ohio-5878, ¶ 41.

{¶22} The mere assertion that the caseworkers made unreliable or false and fraudulent statements to the juvenile court, without more, is insufficient to establish that the caseworkers acted with malicious purpose, in bad faith, or in a wanton or reckless manner. The content of the statements made to the juvenile court were available to the appellants, as some of those reports exist in the record of this case

(though we cannot consider their substance in the determination of this motion). The appellants had a duty to say something more than that the statements were unreliable or false. The amended complaint does not set forth what this unreliable or fraudulent information was and it was required to do so on some level.

### Failure to Act on CCHMC Concerns

{¶23} The appellants next argue that the caseworkers breached their duty to investigate allegations of abuse that arose from G.B.'s hospitalization at CCHMC. As it related to the claims of G.B.'s condition while at the hospital, the amended complaint stated that caseworkers "were called to the hospital to meet with G.B. and her parents." During the time of her hospitalization, HCJFS "took no action and allowed [mother] to take G.B. home." The caseworkers "made the indefensible decision to return G.B. to the depraved custody of her parents." Finally, the amended complaint stated that the caseworkers "made a follow-up visit to G.B.'s home on March 4, 2015 and allegedly found everything was fine and that G.B. was happy and healthy."

{¶24} Within these allegations, the amended complaint makes a number of assertions. They can be reduced to two basic claims: the caseworkers failed to report abuse, and the caseworkers failed to perform an adequate investigation. We will discuss each in turn.

{¶25} First, we conclude that HCJFS through its caseworkers does not have a duty to report child abuse. First, HCJFS is the agency to which abuse is reported. *See* R.C. 2151.421(A)(1)(a). And there is no duty on the part of a children's services agency to report suspected abuse to other agencies such as law enforcement. *See* *O'Toole v. Denihan*, 118 Ohio St.3d 378, 2008-Ohio-2574, 889 N.E.2d 505, ¶ 2.

{¶26} We next turn to the claim that the agency, through its caseworkers, failed to perform an adequate investigation. We begin by noting that the amended complaint concedes that some form of investigation took place, with both a hospital and a home visit. The amended complaint claims that the agency, through its caseworkers, should have sought removal of G.B. But the observations made by CCHMC related to poor parental care: malnourishment, low weight, and other related issues which were related to "lack of medical care, financially disadvantaged [sic], poor family support."

{¶27} The amended complaint then goes on to conclude that the investigation must have been inadequate because of the extent of G.B.'s post-hospitalization mistreatment that was uncovered after G.B.'s death. But there are no allegations about what the investigation should have uncovered or how it was inadequate. The assertion that since the injuries to G.B. had been ongoing and substantial they must have been obvious at the time of the investigation is pure speculation.

{¶28} There is no liability in Ohio for a children's services agency or its caseworkers for failing to investigate allegations of abuse. *Marshall v. Montgomery Cty. Children Serv. Bd.*, 92 Ohio St.3d 348, 351-352, 750 N.E.2d 549 (2001). But HCJFS, through its caseworkers, did conduct an investigation into G.B.'s care as a result of her stay at CCHMC. At the time, the concerns were malnourishment and poor family support. There were no expressed concerns about physical abuse, which was the cause of G.B.'s death. The speculation that evidence of physical abuse should have been apparent during the March 4 home visit is not enough to establish that the caseworkers engaged in "reckless, willful, wanton or bad faith actions/inactions."

**Claim That Caseworkers Acted Recklessly,
Wantonly, Maliciously, or in Bad Faith**

{¶29}   The appellants next claim that the trial court improperly granted the motion for judgment on the pleadings because the amended complaint had made sufficient allegations that the caseworkers had engaged in "reckless, willful, wanton or bad faith actions/inactions."

{¶30}   In their brief, the appellants summarize the allegations against the caseworkers, in which they claim:

that they were the [HCJFS] caseworkers who worked on G.B.'s case; that they provided to the Juvenile Court unreliable information and/or information that was the result of their reckless conduct, willful misconduct, and/or wanton misconduct; that the information they provided ultimately led to G.B. being placed back with her parents; that Children's Hospital reported G.B.'s starvation and abuse to them; that they breached their statutory duty to fully investigate the reported starvation and abuse, including a failure to properly and adequately conduct home visits to check in on G.B.; that they allowed G.B. to return home with her parents after being released from the hospital; and that they had a role in creating the circumstances that ultimately led to G.B.'s death, despite being on notice that she was being starved and abused.   The Estate's amended complaint contains all the foregoing specific material allegations of reckless, willful, wanton, or bad faith actions/inactions against the individual caseworkers and clearly alleges the acts or omissions were at least reckless, thereby exempting them from immunity.

Much of this is a restatement of arguments previously made, but it goes no farther to establishing that the amended complaint set forth cognizable claims.

{¶31}   The Ohio Supreme Court has set forth the definitions of reckless, willful, and wanton misconduct as it relates to immunity.  *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266.  The court said:

Willful misconduct implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury. [*Tighe v. Diamond*, 149 Ohio St. 520, 527, 80 N.E.2d 122 (1948)]; *see also Black's Law Dictionary* 1630 (8th Ed.2004) (describing willful conduct as the voluntary or intentional violation or disregard of a known legal duty).

Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result.  [*Hawkins v. Ivy*, 50 Ohio St.2d 114, 117-118, 363 N.E.2d 367 (1977)]; *see also Black's Law Dictionary* 1613-1614 (8th Ed.2004) (explaining that one acting in a wanton manner is aware of the risk of the conduct but is not trying to avoid it and is indifferent to whether harm results).

Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct.  *Thompson v. McNeill*, 53 Ohio St.3d 102, 104-105, 559 N.E.2d 705 (1990), adopting 2 Restatement of the Law 2d, Torts, Section 500, at 587 (1965); *see also Black's Law Dictionary*

1298-1299 (8th Ed.2004) (explaining that reckless conduct is characterized by a substantial and unjustifiable risk of harm to others and a conscious disregard of or indifference to the risk, but the actor does not desire harm).

*Id.* at ¶ 32-34. Further, bad faith involves a dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another. *Cook v. Cincinnati*, 103 Ohio App.3d 80, 91, 658 N.E.2d 814 (1st Dist.1995), citing *Jackson v. Butler Cty. Bd. of Commrs.*, 76 Ohio App.3d 448, 602 N.E.2d 363 (12th Dist.1991).

{¶32} The amended complaint does not specify how the conduct of the caseworkers constituted willful misconduct. It does not specify how the conduct constituted wanton misconduct. It does not specify how the conduct constituted reckless misconduct. And it does not specify how the caseworkers acted in bad faith. In essence, what the amended complaint has alleged is that G.B. had suffered from a period of abuse for some period of time prior to her death. HCJFS was involved with G.B. as a result of the report from CCHMC for neglect and malnutrition. During the course of that investigation, HCJFS, through its caseworkers, should have discovered the signs of physical abuse. Because they did not, they must have been acting in a willful, wanton, or reckless manner or they must have been acting in bad faith. But merely saying that they had acted in one of those ways (the amended complaint cannot even identify which) is insufficient. Unsupported legal conclusions are not accepted as true for purposes of a motion to dismiss and are insufficient to withstand such a motion. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 193, 532 N.E.2d 753 (1988). "A complaint must be more than bare assertions of legal conclusions." *Vagas v. Hudson*, 9th Dist. Summit No. 24713, 2009-Ohio-6794, ¶ 10.

{¶33} The amended complaint in this case did not set forth sufficient facts to survive the motions for judgment on the pleadings. The trial court correctly granted those motions.

### Conclusion

{¶34} As the United States Supreme Court has held, the "state does not become the permanent guarantor of an individual's safety by having once offered him shelter." *DeShaney v. Winnebago Cty. Dept. of Social Serv.*, 489 U.S. 189, 201, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). What happened to G.B. is unspeakably tragic, but the fault for her misfortune lies with her parents. We overrule the appellants' sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**WINKLER, J.**, concurs.
**CROUSE, J.**, concurs in part and dissents in part.

**CROUSE, J.,** concurring in part and dissenting in part.

{¶35} I concur with the majority that HCJFS is entitled to political subdivision immunity under R.C. 2744.02. I further agree with the majority that the complaint offers only unsupported conclusions concerning the reports submitted by the caseworkers to the juvenile court and is therefore insufficient to establish that the HCJFS caseworkers acted in a wanton or reckless manner in that regard. However, I disagree with the majority's conclusion that the complaint does not sufficiently plead facts that demonstrate wanton or reckless conduct[1] by the individual caseworkers on the claim of failure to adequately investigate the report of abuse/neglect by CCHMC.

---

[1] While the complaint also alleges that the caseworkers acted maliciously and in bad faith, I do not believe the complaint alleges sufficient facts to support those allegations.

{¶36} In ruling on a motion for judgment on the pleadings, "a court must construe the material allegations in the complaint, along with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party[.]" *Ohio Manufacturers' Assn. v. Ohioans for Drug Price Relief Act,* 147 Ohio St.3d 42, 2016-Ohio-3038, 59 N.E.3d 1274, ¶ 10. The court may grant the motion "only if it appears beyond doubt that the nonmoving party can prove no set of facts entitling it to relief." *Id.* Thus, the nonmoving party is not required to affirmatively dispose of the immunity question at the pleading stage. *Scott v. Columbus Dept. of Pub. Utils.*, 192 Ohio App.3d 465, 2011-Ohio-677, 949 N.E.2d 552, ¶ 8 (10th Dist.). "Requiring a plaintiff to affirmatively demonstrate an exception to immunity at this stage would be tantamount to requiring the plaintiff to overcome a motion for summary judgment at the pleading stage. Instead, a plaintiff must merely allege a set of facts that, if proven, would plausibly allow for recovery." *Id.*

{¶37} R.C. 2744.03(A)(6)(b) abolishes an individual employee's grant of immunity when "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner."[2] In the context of R.C. 2744.03(A)(6)(b), wanton misconduct "is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, ¶ 33. Reckless conduct "is a perverse disregard of a known risk." *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, ¶ 73.

---

[2] I note that the trial court analyzed the individual employees' immunity under R.C. 2744.02. But that standard applies only to HCJFS.

{¶38} In concluding that the appellants failed to allege wanton or reckless misconduct by the HCJFS employees, the trial court and the majority heavily rely on the complaint's "concession" that a home visit took place. Contrary to what the trial court and the majority claim, however, the complaint does not concede that the caseworkers actually inspected the home. Rather, it alleges that the caseworkers contended that they inspected the home. Specifically, the complaint states that the caseworkers "allegedly made a follow-up visit to [G.B.'s] home on March 4, 2015 and allegedly found everything was fine and that [G.B.] was happy and healthy." Nevertheless, even if the complaint can be read to allege that the caseworkers did perform some sort of follow-up home visit, a wrongful-death claim can still be made against the individual caseworkers if they breached their duty to investigate the child-abuse report pursuant to R.C. 2151.421 by "acting recklessly within or in response to that investigation." *See Gomez v. Noble Cty. Children Servs.*, 7th Dist. Noble No. 09 NO 361, 2010-Ohio-1538, ¶ 56-57, citing *O'Toole* at ¶ 72-91.

{¶39} A review of the complaint reveals sufficient underlying facts relating to the HCJFS employees' omissions and states of mind, as well as the risk or probability of harm. With regard to the risk or probability of harm, the complaint initially details mother's extensive history with HCJFS. It states that, at G.B.'s birth, HCJFS immediately removed G.B. from mother's custody because mother had abused her other children, who were also removed from the home. According to the complaint, G.B. remained in HCJFS temporary custody for eight months and under the protective supervision of HCJFS for an additional three months.

{¶40} The complaint then states that mother took G.B. to CCHMC approximately one year after regaining custody. The complaint claims that the hospital personnel documented significant indicia of abuse. Specifically, it claims that the personnel observed gait problems, joint swelling, and weight below the third

20

percentile for G.B.'s age. G.B.'s medical records, attached to the complaint, note a complex social history, severe protein malnutrition, and a differential diagnosis of child neglect. The exhibit further reads: "Often, [G.B.] would look to mom * * * prior to placing [food] in her mouth, as if waiting for an ok. If mom said 'eat it' or 'go ahead' she then put it in her mouth and started to chew." The complaint alleges this behavior is indicative of long-standing abuse by mother. In their final assessment, the hospital personnel concluded that G.B.'s failure to thrive was "most likely social" and HCJFS would be consulted.

{¶41} According to the complaint, G.B.'s death occurred three months after her discharge from CCHMC and three weeks after an alleged visit of mother and father's home. The complaint states that, at her death, two-year-old G.B. weighed only 13 pounds and lived in a bathtub full of feces and blood. The Hamilton County coroner's report, attached to the complaint, certified that G.B. had been subjected to "Battered Child Syndrome with Acute and Chronic Intracranial Hemorrhages and Starvation" and listed the onset of such treatment as "months." The coroner also observed over 100 injuries, including bite marks, whip marks, and a gash in G.B.'s forehead that was hand-stitched with needle and thread. The coroner opined that these injuries did not happen immediately prior to her death. In fact, based on the wounds, the coroner opined that G.B. was beaten, tortured, and starved "her entire pathetic, pathetically short life."

{¶42} With regard to the employees' omissions, the complaint claims that the HCJFS employees failed to properly investigate the CCHMC personnel's report regarding the clear and obvious signs of abuse and neglect exhibited by G.B. Specifically, it alleges that the hospital personnel called HCJFS regarding their observations and that the HCJFS employees went to the hospital to meet with G.B. and mother. It further states that the employees "took no action" in response to the

personnel's report of abuse, despite meeting with a severely-undernourished G.B. at the hospital.

{¶43} The complaint also claims that the HCJFS employees failed to properly inspect the home of mother and father, which was an unsuitable placement for G.B. It alleges that, based on G.B.'s condition leading up to her death and the home's condition at the time of her death, the employees either never performed a home visit or performed the visit in a wanton or reckless manner. Furthermore, the complaint states that the head of HCJFS admitted that the employees did not adhere to HCJFS procedures during their work on G.B.'s case. Based on the foregoing, the complaint alleged sufficient underlying facts to support the appellants' claim that the HCJFS employees failed to act despite their knowledge of a known risk or probable harm.

{¶44} Early resolution of whether employees of political subdivisions are immune from liability is an important consideration. *See Riscatti v. Prime Properties Ltd. Partnership*, 137 Ohio St.3d 123, 2013-Ohio-4530, 998 N.E.2d 437, ¶ 17 (discussing the importance of determining R.C. Chapter 2744 immunity before trial). However, the immunity question cannot always be determined at the earliest stage of litigation.

> Very often, the evidence necessary for a plaintiff to prevail is not obtained until the plaintiff is able to discover materials in the defendant's possession. If the plaintiff were required to prove his or her case in the complaint, many valid claims would be dismissed because of the plaintiff's lack of access to relevant evidence. Consequently, as long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss.

*York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145, 573 N.E.2d 1063 (1991) (expressly refusing to hold plaintiffs who bring reckless-conduct claims against the state to a heightened pleading standard).

{¶45} As described above, the complaint discusses in excruciating detail the severe indicia of abuse and neglect observed by CCHMC; the hospital personnel's suspicion that defendant mother was involved in the abuse and neglect; the hospital personnel's report of abuse and neglect to the HCJFS employees; the HCJFS employees' failure to investigate; G.B.'s return to the home of mother and father; the HCJFS employees' "alleged" home visit; G.B.'s tragic death three weeks later; and the coroner's finding that the cause of death was "Battered Child Syndrome with Acute and Chronic Intracranial Hemorrhages and Starvation" with an onset of months. Based on these statements, and construing all allegations most strongly in their favor, I find that the appellants have alleged sufficient facts which, if proven, could plausibly establish an exception to the individual caseworkers' immunity under R.C. 2744.03(A)(6)(b).

{¶46} For these reasons, I respectfully dissent from that portion of the majority's opinion that holds otherwise.

Please note:
    The court has recorded its own entry on the date of the release of this opinion.