[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ferrara v. Trumbull Cty. Bd. of Elections*, Slip Opinion No. 2021-Ohio-3156.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-3156

THE STATE EX REL. FERRARA *v.* TRUMBULL COUNTY BOARD OF ELECTIONS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ferrara v. Trumbull Cty. Bd. of Elections*, Slip Opinion No. 2021-Ohio-3156.]**

*Elections—Mandamus—Writ of mandamus sought to compel board of elections to certify relator's name to ballot as candidate for township trustee—Part-petition rejected in its entirety because relator had indicated an incorrect number of signatures in his circulator's statement—Board of elections ordered to determine number of valid signatures on rejected part-petition and if appropriate, certify relator's name to the ballot—Rust v. Lucas Cty. Bd of Elections overruled—Limited writ granted.*

(No. 2021-1050—Submitted September 8, 2021—Decided September 14, 2021.)

IN MANDAMUS.

_____

**DEWINE, J.**

{¶ 1} The Trumbull County Board of Elections is attempting to prevent Mark Ferrara's name from appearing on the ballot for Brookfield Township trustee. The board rejected an entire part-petition submitted by Ferrara because the part-petition contained one signature more than Ferrara had indicated. With the signatures from that part-petition invalidated, Ferrara fell short of the 25 signatures he needed. Ferrara seeks a writ of mandamus ordering the board of elections to certify his name to the ballot. We grant Ferrara a limited writ: we order the board of elections to determine the number of valid signatures on the part-petition at issue and, if appropriate, to certify Ferrara's name to the ballot.

## I. BACKGROUND

{¶ 2} To appear on the ballot, Ferrara must amass 25 qualifying signatures of nomination. *See* R.C. 3513.253. The signatories must be electors residing in Brookfield Township who are registered to vote. *See* R.C. 3501.01(N). Nominating electors sign part-petitions. Each part-petition contains numbered cells in which electors provide their signatures and additional information. Below the signature cells, under the heading "Circulator Statement," is a blank for the circulator to indicate the number of signatures on the part-petition.

{¶ 3} Ferrara timely submitted a nominating petition that consisted of two part-petitions. The first part-petition contained 20 signatures, as he accurately indicated. The Trumbull County Board of Elections reviewed that petition and found 16 of those signatures to be valid.

{¶ 4} Ferrara's trouble arose with his second part-petition. Ferrara submitted 17 signatures, but on the blank space instructing him to indicate the number of signatures he wrote "16." The circulator statement signed by Ferrara further indicated that he "witnessed the affixing of every signature; that all signers were to the best of [his] knowledge and belief qualified to sign; and that every signature is to the best of [his] knowledge and belief the signature of the person whose signature it purports to be * * *." Ferrara attests that the indication that the

part-petition contained 16 rather than 17 signatures was simply an error resulting from an inadvertent miscount, and no evidence has been submitted to the contrary. Nevertheless, based on Ferrara's counting mistake, the board of elections invalidated the entire part-petition.

{¶ 5} The director of the Trumbull County Board of Elections, Stephanie Penrose, informed Ferrara that the board unanimously rejected his nominating petition "due to undercounting of signatures on the circulator's statement." Ferrara promptly requested reconsideration. Citing the Ohio Secretary of State's Election Official Manual, the board of elections unanimously declined to reconsider his part-petition. Penrose explained, "The Election Official Manual is very clear that a part-petition must be invalidated in the event of undercounting on a circulator statement."

{¶ 6} Ferrara filed an original action in this court seeking a writ of mandamus to compel the board of elections to place his name on the November election ballot. We set an expedited briefing schedule sua sponte. 164 Ohio St.3d 1414, 2021-Ohio-2897, __N.E.3d __.

## II. ANALYSIS

{¶ 7} "A writ of mandamus is an extraordinary remedy." *State ex rel. Brown v. Ashtabula Cty. Bd. of Elections*, 142 Ohio St.3d 370, 2014-Ohio-4022, 31 N.E.3d 596, ¶ 11. The writ will issue only if the relator demonstrates a clear legal right to relief, a clear legal duty on the part of the board to provide it, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6. The parties agree that, with the November election drawing near, the third requirement is satisfied. *See also id.* When analyzing the first two requirements, the inquiry is whether the board " 'engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable legal provisions.' " *Id.* at ¶ 7, quoting *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 11.

### A. R.C. 3501.38 Does Not Authorize Invalidation of Ferrara's Part-Petition

{¶ 8} The board of elections cites R.C. 3501.38(E)(1) and the guidance it received from the secretary of state interpreting that provision as the basis for its decision to toss out Ferrara's entire part-petition due to his undercount. R.C. 3501.38(E)(1) provides:

> On each petition paper, the circulator shall indicate the number of signatures contained on it, and shall sign a statement made under penalty of election falsification that the circulator witnessed the affixing of every signature, that all signers were to the best of the circulator's knowledge and belief qualified to sign, and that every signature is to the best of the circulator's knowledge and belief the signature of the person whose signature it purports to be or of an attorney in fact acting pursuant to section 3501.382 of the Revised Code.

We have said that the requirements of R.C. 3501.38(E)(1) "are mandatory and require strict compliance," *State ex rel. Commt. for Referendum of Lorain Ordinance No. 77-01 v. Lorain Cty. Bd. of Elections*, 96 Ohio St.3d 308, 2002-Ohio-4194, 774 N.E.2d 239, ¶ 49. And "a board of elections shall accept any petition" that complies with the election laws. R.C. 3501.39(A).

{¶ 9} The question is whether an entire part-petition should be invalidated when a circulator "indicate[s]" the number of signatures but makes a minor, inadvertent mistake in recording the count of signatures on the ballot. We hold that it should not be.

{¶ 10} As an initial matter, there is nothing in the statutory text that requires a part-petition to be invalidated for such a mistake. R.C. 3501.38(E)(1) requires

the circulator to "indicate" the number of signatures, but it does not state that a petition should be invalidated if the indication is incorrect.

{¶ 11} Moreover, R.C. 3501.38 excludes a circulator's "indicat[ion]" of the number of signatures from its oath requirement. The statute requires a circulator to attest under penalty of election falsification that he witnessed every signature and that to the best of the circulator's knowledge, every signatory was qualified to sign and who the person purports to be. R.C. 3501.38(E)(1). Ferrara met these requirements by attesting that he had witnessed "the affixing of *every* signature" and that to the best of his knowledge and belief, "*all* signers" were qualified to sign and "*every* signature" was the signature of the person it purports to be. (Emphasis added.)

{¶ 12} In contrast, the statute contains no oath requirement for the number of signatures. The circulator is simply told to indicate the number of signatures. R.C. 3501.38(E)(1). Thus, there is nothing in the statute that mandates that Ferrara's part-petition be invalidated.

{¶ 13} The board of elections seeks to overcome the lack of statutory support for its position by relying on our prior decision in *Rust v. Lucas Cty. Bd of Elections*, 108 Ohio St.3d 139, 2005-Ohio-5795, 841 N.E.2d 766, and on the principle that the judiciary should defer to the secretary of state's interpretation of the statute.

{¶ 14} In *Rust*, we dealt with facts that were similar to those before us today. There, the board of elections rejected entire part-petitions that, like Ferrara's, contained more signatures than the circulator had indicated. *Id.* at ¶ 3. Rust provided an explanation for the undercount, saying that he had not included in his count signatures that he knew to be provided by unqualified people. *Id.* at ¶ 14. Nonetheless, the court found that the board had not abused its discretion in rejecting the entire part-petitions. It reached this conclusion by deferring to guidance provided by the secretary of state "instruct[ing] boards of elections that R.C.

3501.38 requires that if the number indicated by the circulator is less than the actual number of signatures, the entire part-petition must be invalidated." *Id*. at ¶ 12.

{¶ 15} Despite our holding in *Rust,* we have not always required a part-petition to be invalidated when the circulator has made a mistake in indicating the number of signatures. For example, in *State ex rel. Schwarz v. Hamilton Cty. Bd. of Elections*, 173 Ohio St. 321, 181 N.E.2d 888 (1962), we held that a writ of mandamus should issue ordering a candidate to be placed on the ballot after the board of elections rejected one of the candidate's part-petitions because it contained one more signature than had been indicated. We deemed the board of elections' decision to reject the petition "too technical, unreasonable and arbitrary." *Id.* at 323; *see also Ohio Mfrs.' Assn. v. Ohioans for Drug Price Relief Act*, 147 Ohio St.3d 42, 2016-Ohio-3038, 59 N.E.3d 1274, ¶ 19 ("In cases in which the circulator's statement slightly *undercounts* the signatures, this court has ordered the entire part-petition counted, so long as there is no indication of fraud or material misrepresentation" [emphasis in original]).

{¶ 16} Similarly, in *State ex rel. Citizens for Responsible Taxation v. Scioto Cty. Bd. of Elections*, 65 Ohio St.3d 167, 602 N.E.2d 615 (1992), we held that the board of elections erred in rejecting part-petitions on which the circulator had indicated one more signature than the part-petition actually contained. In doing so, we noted that our prior caselaw "implies that arithmetic error will be tolerated, but only if the error does not promote fraud." *Id.* at 172. We also looked to guidance from the secretary of state instructing boards of elections "to reject an entire part-petition only where the circulator states a number '*less* than the total number of *uncrossed out* signatures' (emphasis *sic*) and to, in effect, overlook discrepancies in the number of signatures 'in all other instances.' " *Id.*

{¶ 17} The guidance provided by the secretary of state is as confusing, and inconsistent, as our caselaw. The secretary instructs boards of elections to treat undercounts differently than overcounts. According to the secretary of state, if the

circulator undercounts the number of signatures, "then the board must reject the entire part-petition." Ohio Secretary of State, *Election Official Manual*, Chapter 11, Section 1.03, p. 11-6 to 11-7. For authority in support of that directive, the manual cites our decision in *Rust*. *Id.* at p. 11-7, n. 16. In the case of an overcount, by contrast, "the board must review the validity of each signature as usual" as long as " 'there is no indication of fraud or material misrepresentation.' " *Id.* at p. 11-7, quoting *State ex rel. Curtis v. Summit Cty. Bd. of Elections*, 144 Ohio St.3d 405, 2015-Ohio-3787, 44 N.E.3d 261, ¶ 8. It is only when the overcount appears " 'systemic' " that the secretary of state guides the board to invalidate the entire part-petition. *Id.*, quoting *Ohio Mfrs.' Assn.* at ¶ 44.

{¶ 18} The different treatment of undercounts and overcounts by the secretary of state, and sometimes by this court, is befuddling. There is absolutely no support in the statute for drawing such a distinction. If R.C. 3501.38(E)(1) truly required that an entire part-petition be invalidated as the result of an incorrect "indicat[ion]," it would make no difference whether the mistake is in indicating too many or too few signatures. It is telling that while the dissenting opinion attempts to defend this distinction, it offers no statutory basis for treating overcounts differently than undercounts.

{¶ 19} Peeling the onion reveals a very tenuous (and circular) basis for the rejection of Ferrara's part-petition. The board of elections cited guidance from the secretary of state to support its decision to invalidate Ferrara's part-petition. The secretary of state cited our decision in *Rust* as the justification for the guidance it issued. And in *Rust*, we deferred to the secretary of state's guidance in finding that the board of elections properly rejected a part-petition with an incorrect signature count.

{¶ 20} All of this raises the question whether deference to the secretary of state is appropriate in this instance. We hold that it is not. And because our decision

in *Rust* was premised on deference to the secretary of state's interpretation and has created unnecessary confusion in this area of the law, we overrule *Rust*.

{¶ 21} The secretary of state has authority to issue to boards of elections "rules, directives, or advisories." *See* R.C. 3501.11(P). But only the judiciary has ultimate authority to interpret the law. *See Marbury v. Madison*, 5 U.S. 137, 177, 2 L.Ed. 60 (1803); *State ex rel. Davis v. Hildebrant*, 94 Ohio St. 154, 169, 114 N.E. 55 (1916) ("The construction of the laws and Constitution is for the courts"). We must "jealously guard[]" that division of power. *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 60, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (plurality). There is authority that supports the principle that when a statute is truly ambiguous in that there are two equally persuasive and competing interpretations of the law, it is permissible for a court to consider an administrative construction of the statute. *See* R.C. 1.49(F); *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶ 29. But whatever weight one assigns to that principle, it applies only when a statute is truly ambiguous. *Id.* There is nothing ambiguous about R.C. 3501.38(E)(1).

{¶ 22} We do not share the dissenting opinion's concern that following the plain terms of R.C. 3501.38(E)(1) in this case will "open[] the door to permit others without such evidence—and with perhaps less pure motives" than Ferrara—to exploit the petition process. Dissenting opinion at ¶ 40. R.C. 3501.38(F) explicitly provides that if a circulator knowingly allows an unqualified person to sign or forge another's name, "that petition paper is invalid." And nothing in today's decision disturbs the litany of caselaw providing that evidence of fraud triggers full invalidation of a part-petition. *See, e.g., Ohio Mfrs.' Assn.*, 147 Ohio St.3d 42, 2016-Ohio-3038, 59 N.E.3d 1274, at ¶ 19-20.

{¶ 23} The plain terms of R.C. 3501.38(E)(1) provide no basis for the rejection of an entire part-petition based on a minor mistake in indicating the

number of signatures it contains. The Trumbull County Board of Elections erred in rejecting Ferrara's entire part-petition.

### B. The Writ Is Limited in Scope

{¶ 24} Ferrara's requested relief is an order to the board of elections to certify his name to the ballot. The board's director stated, in an email to Ferrara, "It *appears* you would have had 32 valid signatures [and thus enough signatures to qualify for the ballot] had this part-petition been allowed." (Emphasis added.) However, while the board admits that its director wrote these words to Ferrara, the board now denies that it has actually verified the signatures on the disputed part-petition.

{¶ 25} Because the record does not conclusively demonstrate that the board of elections has verified the signatures on Ferrara's second part-petition, it would be premature for us to grant Ferrara's requested writ certifying him to the ballot. Thus, we order the Trumbull County Board of Elections to consider the 17 signatures Ferrara submitted in his second part-petition. If that review reveals that Ferrara has submitted a sufficient number of valid signatures, the board must certify his name to the ballot.

### III. CONCLUSION

{¶ 26} We grant a writ of mandamus ordering the board to determine the number of valid signatures on Ferrara's second part-petition and, if appropriate, to certify his name to the ballot.

Limited writ granted.

O'CONNOR, C.J., and KENNEDY, FISCHER, DONNELLY, and STEWART, JJ., concur.

BRUNNER, J., dissents, with an opinion.

_____

**BRUNNER, J., dissenting.**

**{¶ 27}** I respectfully dissent from the majority opinion because at no time did relator, Mark Ferrara, state that he actually witnessed all 17 signatures on the part-petition in question. Nor has he provided to the board or this court an after-the-fact affidavit confirming that he did. Ferrara attested in the circulator's statement on the disputed part-petition to having witnessed only 16 signatures. In the affidavit he submitted with his brief, he stated: "The second part petitions [sic] contained a total of 17 signatures, however, I inadvertently, attested that there was a total of 16 total signatures. This was a result of inadvertently miscounting the total number of signatures. I did not intend to mislead the Board of Elections." In other words, the circulator's statement of the part-petition in question indicates that Ferrara witnessed only 16 of the 17 signatures appearing on the part-petition. His affidavit filed with his complaint does not vouch for the additional signature appearing on the petition by affirmatively stating that he witnessed all 17. He states only that he wrote in the wrong number. Because of this simple, critical deficiency, Ferrara is not entitled to a writ of mandamus.

> [M]andamus is an extraordinary remedy that is to be exercised with great caution and issued only when the right and duty is absolutely clear. Mandamus will not issue in doubtful cases. *State ex rel. Taylor v. Glasser*, 50 Ohio St.2d 165, 364 N.E.2d 1 (1977); *State ex rel. Shafer v. Ohio Turnpike Comm.*, 159 Ohio St. 581, 113 N.E.2d 14 (1953); *State ex rel. Connole v. Cleveland Bd. of Edn.*, 87 Ohio App.3d 43, 621 N.E.2d 850 (1993); *State ex rel. Dayton-Oakwood Press v. Dissinger*, 32 Ohio Law Abs. 308, 1940 Ohio App. LEXIS 1173 (1940). The Supreme Court of Ohio has also established that the facts submitted in support of the complaint for mandamus and the proof produced must be plain, clear, and convincing before a court is justified in using the "strong arm of the law" and granting a

10

writ of mandamus. *State ex rel. Pressley v. Indus. Comm. of Ohio*, 11 Ohio St.2d 141, 161, 228 N.E.2d 631 (1967).

*State ex rel. S.P. v. Cleveland*, 8th Dist. Cuyahoga No. 105795, 2018-Ohio-2063, ¶ 8.

{¶ 28} With Ferrara attesting to only 16 signatures, the board of elections is unable to determine which of the 17 signatures appearing on the part-petition was not witnessed. Thus, not only has Ferrara not shown that he is entitled to relief, but also the board does not have a duty to provide the relief requested and so has not erred in rejecting Ferrara's part-petition.

{¶ 29} And rather than focusing on the question of whether deference should be given to the secretary of state's interpretation of a statute, the legal analysis of which seems to have swirled to the point of making less clear the line between the executive and judicial branches, we simply should be reviewing the facts before us in this original action in mandamus and deciding whether the relator has complied with the law—that is, whether he is entitled to the relief he seeks. Ferrara must establish "a clear legal right to the requested relief, a clear legal duty on the part of the board to provide it, and the lack of an adequate remedy in the ordinary course of the law [and he must] * * * make this showing by clear and convincing evidence." *State ex rel. Tarrier v. Public Emps. Retirement Bd.*, 164 Ohio St.3d 137, 2021-Ohio-649, 172 N.E.3d 129, ¶ 15. Ferrara has not provided evidence to the board of elections or this court that he has complied with the law. Specifically, at no point has he stated that he witnessed all 17 signatures on the part-petition in question or that all 17 signatures are signatures of persons who to his knowledge and belief are qualified to sign the petition as electors or that all 17 signatures are signatures of the persons whose signatures they purport to be. *See* R.C. 3501.38(E)(1).

**{¶ 30}** It would behoove this court to revisit the words of our concise decision in *State ex rel. Reese v. Tuscarawas Cty. Bd. of Elections*, which in total states:

> The relator has failed to comply with statutory requirements as to his petition for candidate. The action of the board of elections in rejecting the petition was not an abuse of discretion or contrary to law. The writ of mandamus is denied.

6 Ohio St.2d 66, 67, 215 N.E.2d 698 (1966).

### The Requirements of R.C. 3501.38

**{¶ 31}** R.C. 3501.38 requires:

> *All* declarations of candidacy, nominating petitions, or other petitions presented to or filed with the secretary of state or a board of elections or with any other public office for the purpose of becoming a candidate for any nomination or office or for the holding of an election on any issue *shall*, in addition to meeting the other specific requirements prescribed in the sections of the Revised Code relating to them, *be governed by the following rules:*

(Emphasis added.) When a candidate desires to run for office, he or she must qualify as a candidate by filing a petition with the appropriate elections office. Depending on the office sought, there are other statutory requirements that must be met, but universally, petitions not governed by local municipal charter are subject to the requirements of R.C. 3501.38. Of particular importance in Ferrara's case is the circulator's-statement requirement contained in R.C. 3501.38, which provides:

12

(E)(1) On each petition paper, the circulator shall indicate the number of signatures contained on it, and *shall sign a statement made under penalty of election falsification that the circulator witnessed the affixing of every signature*, that *all signers were to the best of the circulator's knowledge and belief qualified to sign*, and that *every signature is to the best of the circulator's knowledge and belief the signature of the person whose signature it purports to be* or of an attorney in fact acting pursuant to section 3501.382 of the Revised Code. * * *

* * *

(F) Except as otherwise provided in section 3501.382 of the Revised Code, *if a circulator knowingly permits an unqualified person to sign a petition paper* or permits a person to write a name other than the person's own on a petition paper, *that petition paper is invalid*; otherwise, the signature of a person not qualified to sign shall be rejected but shall not invalidate the other valid signatures on the paper.

(G) *The circulator of a petition may, before filing it in a public office, strike from it any signature the circulator does not wish to present as a part of the petition.*

(Emphasis added.) The majority acknowledges the requirement in R.C. 3501.38(E)(1) that the circulator "indicate the number of signatures contained on" the part-petition but disregards the fact that the indicated number is *part of the circulator's statement,* which is made under penalty of election falsification. R.C. 3501.38(E)(1). The circulator's statement on the part-petition in question appears below:

---

**Circulator Statement**

*Must be completed and signed by the circulator.*

I, _MARK FERRARA_ , declare under penalty of election falsification that I reside at the address
Printed Name of Circulator

appearing below my signature; that I am the circulator of the foregoing petition containing **16** signatures;
Number

that I witnessed the affixing of every signature; that all signers were to the best of my knowledge and belief

qualified to sign; and that every signature is to the best of my knowledge and belief the signature of the person

whose signature it purports to be or of an attorney in fact acting pursuant to section 3501.382 of the Revised Code.

_____
Signature of Circulator

---

The indication of 16, and not 17, signatures witnessed, believed to be qualified, and believed to be those of the persons whose they purport to be leaves the board of elections in a quandary—which of the 17 signatures did not pass muster?

{¶ 32} It is significant that R.C. 3501.38(G) permits the circulator of the petition, before filing it, to strike from it any signature the circulator does not wish to present as part of the petition. Ferrara did not do this. Thus, when the board of elections noticed that there were 17 signatures, none of which had been stricken, while Ferrara had attested to only 16, the board was left to guess which of the 17 signatures was not subject to his attestation in his circulator's statement.

{¶ 33} No board of elections has the discretion or the authority to not follow the law. R.C. 3501.11 (boards of elections "shall perform all the duties imposed by law"). Because the circulator's statement addresses only 16 of the 17 signatures on the part-petition in question, R.C. 3501.38(F) applies and requires that the entire part-petition be invalidated. *See* R.C. 3501.38(F) ("if a circulator knowingly permits an unqualified person to sign a petition paper * * * that petition paper is invalid"). " 'The word "knowingly," as used in the statute, is used in its ordinary and common meaning that one is aware of existing facts.' " *State ex rel. Oster v. Lorain Cty. Bd. of Elections*, 93 Ohio St.3d 480, 487, 756 N.E.2d 649 (2001), quoting *State ex rel. Carson v. Jones*, 24 Ohio St.2d 70, 72, 263 N.E.2d 567 (1970),

14

and citing *State ex rel. Citizens for Responsible Taxation v. Scioto Cty. Bd. of Elections*, 65 Ohio St.3d 167, 174, 602 N.E.2d 615 (1992).  The fact of Ferrara's signature, made under penalty of election falsification, a felony of the fifth degree, R.C. 3501.38(J), cannot lead us to any other conclusion than that his signing of the circulator's statement was done with knowledge of the existing facts that he was attesting to only 16 of the 17 signatures filed.

{¶ 34} In *Prince v. Franklin Cty. Bd. of Elections*, 10th Dist. Franklin No. 98AP-495, 1998 Ohio App. LEXIS 6290, *14-15 (Dec. 24, 1998), the Tenth District Court of Appeals found no mens rea requirement under R.C. 3501.38(E). The court relied on *Morford v. Pyle*, 53 S.D. 356, 220 N.W. 907 (1928), which construed a similar statute requiring that a circulator attest that he observed every person sign.

> "When a person circulates a referendum petition, it is his duty to see * * * every person who signs it.  Unless he does * * * see them all sign, he cannot honestly say that * * * each of them signed it personally * * *; and when a person, not knowing these facts, makes the affidavit above set out, such affidavit is false, and must be knowingly false, and all the names on such petition must be rejected."

(Ellipses added in *Prince*.)  *Prince* at *14-15, quoting *Morford* at 910.  Here, the board of elections, following the instruction of the secretary of state, properly followed R.C. 3501.38(E)(1) and (F) and rejected Ferrara's part-petition.

{¶ 35} Boards of elections are required to "[r]eview, examine, and certify the sufficiency and validity of petitions and nomination papers," R.C. 3501.11(K)(1), and "perform all the duties imposed by law," R.C. 3501.11.  Boards of elections must "accept any petition described in section 3501.38 of the Revised

Code unless * * * [t]he candidate's * * * petition violates the requirements of [R.C. Chapter 3501] * * * or any other requirements established by law." R.C. 3501.39(A). To grant a writ of mandamus ordering the board of elections to accept or even review Ferrara's part-petition in the absence of *any* evidence that he did, in fact, comply with R.C. 3501.38(E)(1) is not appropriate when the board does not have a clear legal duty to accept or review the part-petition. Ferrara has failed to clearly and convincingly demonstrate any right to relief. And there is no basis to find from these facts that the board of elections " 'acted fraudulently or corruptly, abused its discretion, or clearly disregarded applicable law.' " *State ex rel. Miller v. Hamilton Cty. Bd. of Elections*, __Ohio St.3d __, 2021-Ohio-831, __N.E.3d__, ¶ 28, quoting *State ex rel. Brown v. Butler Cty. Bd. of Elections*, 109 Ohio St.3d 63, 2006-Ohio-1292, 846 N.E.2d 8, ¶ 23. The writ of mandamus should be denied.

### Deference to Secretary of State's Interpretations of Election Laws

{¶ 36} In reaching its decision in this case, the majority unnecessarily entangles itself with whether this court should give deference to the secretary of state's interpretation of the law. R.C. 3501.05 requires the secretary of state to "[i]ssue instructions * * * to members of the boards as to the proper methods of conducting elections" and "[p]repare rules and instructions for the conduct of elections." R.C. 3501.05(B), (C). R.C. 3501.11 requires boards of elections to "[m]ake and issue rules and instructions, not inconsistent with law or the rules, directives, or advisories issued by the secretary of state" and "[p]erform other duties as prescribed by law or the rules, directives, or advisories of the secretary of state." R.C. 3501.11(E), (P). *See also State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 59, 2012-Ohio-69, 960 N.E.2d 452, ¶ 16.

{¶ 37} We should not fault the board of elections for following the secretary of state's election-official manual. That is its duty. It would appear that the secretary's manual provides an interpretation of R.C. 3501.38(E)(1) and (F) without supplying the rationale or explanation for its methods of implementation.

Perhaps the secretary's policy and resulting instruction requiring differing outcomes depending on whether there are more or fewer signatures indicated in the circulator's statement than actual uncrossed-out signatures (*see* R.C. 3501.38(G)) on a part-petition appears illogical and less than ideal.  The policy could be taken as observing the sentiment in our caselaw that " 'mere technical irregularities' within an election petition will not serve to deny the electorate the opportunity to make a choice between candidates."  *State ex rel. Schmelzer v. Cuyahoga Cty. Bd. of Elections*, 2 Ohio St.3d 1, 2, 440 N.E.2d 801 (1982).  But even in *Schmelzer,* we recognized that the failure "to comply with the unequivocal statutory requirements governing [a] petition for candidacy and 'the action of the board of elections in rejecting the petition was not an abuse of discretion or contrary to law" and that a writ of mandamus was properly denied.  *Schmelzer* at 4.  This would explain the secretary's policy that in the case of a larger number in the circulator's statement than the number of signatures on the part-petition, there exists the assurance that *all* the petition signatures are attested to according to R.C. 3501.38(E).  In such case, unlike Ferrara's case, the board of elections is not left guessing which signature does not meet the requirements of 3501.38(E).

> This difference in treatment at least makes intuitive sense: if a circulator states that he or she witnessed 20 signatures and there are 22 signatures on the part-petition, that means that there are two that he or she did not witness.  How can the reviewing board of elections be expected to tell which signatures the circulator didn't witness?  On the other hand, if there are 22 signatures and the circulator states that he or she witnessed 28, the circulator has attested to having witnessed at least 22.

*Ohio Mfrs.' Assn.*, 149 Ohio St.3d 250, 2016-Ohio-5377, 74 N.E.3d 399, at ¶ 68 (Pfeifer, J., dissenting).

**{¶ 38}** Rather than battle with the secretary about the efficacy of his election manual or whose interpretation controls or even declare that there is *no longer* deference to the secretary of state's interpretation of election laws, except in the case of their ambiguity, it is more genuine and advisable to follow what we have stated in earlier decisions, that is, that "[b]ased on the applicable law, the secretary of state's construction of the applicable statutory provisions is reasonable and is thus entitled to deference. *See Rothenberg v. Husted*, 129 Ohio St.3d 447, 2011-Ohio-4003, 953 N.E.2d 327, ¶ 2." *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 16. Besides, it is the secretary's duty to follow our caselaw in "[c]ompel[ling] the observance by election officers in the several counties of the requirements of the election laws," R.C. 3501.05(M).

**{¶ 39}** With this in mind, when we determine from the facts whether a relator clearly and convincingly has a clear legal right to the requested relief and whether the board has a clear legal duty to provide it in the absence of an adequate remedy in the ordinary course of the law, *Tarrier*, 164 Ohio St.3d 137, 2021-Ohio-649, 172 N.E.3d 129, at ¶ 15, we provide sound legal guidance to the secretary and future litigants. Then, deference, if any, to a reasonable interpretation by the secretary occurs *after* we have first examined the facts through the lens of the law as any trial court would in an original action. The secretary's interpretation may be evidence or even persuasive authority, but we must do our job in original actions to determine and apply the law to the facts of each case as we view it. This also frees us from the invasive and ever-moving judgment of what is "too technical, unreasonable and arbitrary," *State ex rel. Schwarz v. Hamilton Cty. Bd. of Elections*, 173 Ohio St. 321, 323, 181 N.E.2d 888 (1962), thereby diminishing legal uncertainty in the law.

**{¶ 40}** Had Ferrara supplied in his affidavit to this court an attestation that he actually witnessed all 17 signatures, he would be closer to being entitled to the writ.  But to grant the writ without this evidence promotes fraud.  *See State ex rel. Citizens for Responsible Taxation*, 65 Ohio St.3d at 172, 602 N.E.2d 615 (our caselaw implies that "arithmetic error will be tolerated, but only if the error does not promote fraud").  Even in light of *Ohio Mfrs.' Assn.*, 147 Ohio St.3d 42, 2016-Ohio-3038, 5 N.E.3d 1274, at ¶ 19 ("In cases in which the circulator's statement slightly *undercounts* the signatures, this court has ordered the entire part-petition counted, so long as there is no indication of fraud or material misrepresentation" [emphasis sic]), granting the writ without clear and convincing evidence opens the door to permit others without such evidence—and with perhaps less pure motives than the majority appears to ascribe to Ferrara—to have access to the ballot in the absence of strict compliance, even though it is well settled " 'that election statutes are mandatory and must be strictly complied with,' " *Schmelzer*, 2 Ohio St.3d at 2, 440 N.E.2d 801, quoting *State ex rel. Senn v. Bd. of Elections* 51 Ohio St.2d 173, 174, 367 N.E.2d 879 (1977), citing *State ex rel. Abrams v. Bachrach*, 175 Ohio St. 257, 259, 193 N.E.2d 517 (1963).

**{¶ 41}** Ferrara is not entitled to the relief he seeks, because nowhere in the evidence did Ferrara actually comply with R.C. 3501.38(E)(1).  Thus, this court should not order the board of elections to either review the part-petition further or place Ferrara's name on the ballot.  Then we would not as a consequence be requiring the board of elections to abuse its discretion by finding that even lacking evidence that he complied with R.C. 3501.38(E)(1), Ferrara is entitled to ballot access.

**{¶ 42}** I would deny Ferrara the writ of mandamus requested, because he has not complied with R.C. 3501.38(E)(1) and thus has not demonstrated that he is entitled to the writ.  Accordingly, I respectfully dissent.

————————————

Baker, Dublikar, Beck, Wiley & Mathews, Tonya J. Rogers, and James F. Mathews, for relator.

Dennis Watkins, Trumbull County Prosecuting Attorney, and Ryan J. Sanders, Assistant Prosecuting Attorney, for respondent.

_____