[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ohio Manufacturers' Assn. v. Ohioans for Drug Price Relief Act,* Slip Opinion No. 2016-Ohio-3038.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-3038

OHIO MANUFACTURERS' ASSOCIATION ET AL. *v*. OHIOANS FOR DRUG PRICE RELIEF ACT ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ohio Manufacturers' Assn. v. Ohioans for Drug Price Relief Act,* Slip Opinion No. 2016-Ohio-3038.]

*Elections—Challenge under Article II, Section 1g, Ohio Constitution—Motion for judgment on the pleadings denied.*

(No. 2016-0313—Submitted April 19, 2016—Decided May 18, 2016.)

CHALLENGE under Article II, Section 1g of the Ohio Constitution.

_____

**Per Curiam.**

**{¶ 1}** This is an original action pursuant to Article II, Section 1g of the Ohio Constitution, challenging the petition signatures submitted in support of the "Ohio Drug Price Relief Act."  The relators are the Ohio Manufacturers' Association, Ohio Chamber of Commerce, Pharmaceutical Research and Manufacturers of America, Keith A. Lake, and Ryan R. Augsburger (collectively, "OMA").

**{¶ 2}** Respondents, William S. Booth, Daniel L. Darland, Tracy L. Jones, and Latonya D. Thurman (collectively, "Booth"), who comprise the committee responsible for the Ohio Drug Price Relief Act petition, have filed a Civ.R. 12(C) motion for judgment on the pleadings, arguing that a challenge to the specific part-petitions at issue does not fall within the scope of our original jurisdiction conferred by Section 1g. Alternatively, Booth asks for judgment on the pleadings as to two of the four claims in the challenge.

**{¶ 3}** Respondent Jon Husted, Ohio Secretary of State, has filed a motion for leave to file a response to Booth's motion, along with a proposed memorandum. We grant the motion for leave and hereby deem Husted's memorandum filed instanter.

**{¶ 4}** Upon consideration of the motion for judgment on the pleadings and the filings of the parties, we reject Booth's jurisdictional arguments, and therefore we will not dismiss the challenge in its entirety. We also deny the motion's alternative arguments for partial judgment on the pleadings.

*Background*

**{¶ 5}** Article II, Section 1b of the Ohio Constitution describes a two-step initiative-petition process, by which citizens may propose the passage of a statute. The process begins with the circulation of a petition asking the General Assembly to enact the proposed statute. Section 1b mandates that the petition be submitted to the secretary of state and verified not less than ten days before the commencement of a legislative session. Section 1b further provides that once the sufficiency of the signatures has been confirmed, the secretary of state must submit the petition to the General Assembly as soon as it convenes.

**{¶ 6}** The General Assembly then has four months in which to consider the proposal. *Id.* If the General Assembly rejects the proposed statute, enacts the proposed law in amended form, or allows the four months to elapse without taking any action, then the backers have 90 days to submit a supplemental petition. *Id.* If

2

the supplemental petition is timely and contains a sufficient number of valid signatures, then the proposed law shall be placed on the ballot at the next regular or general election occurring more than 125 days after the supplementary petition is filed. *Id.*

{¶ 7} This case arises out of an effort to enact "The Ohio Drug Price Relief Act" as Section 194.01 of the Ohio Revised Code. Booth submitted part-petitions to the office of the secretary of state on December 22, 2015. On February 4, 2016, Husted certified that the petition met the constitutional thresholds for transmission to the General Assembly, in terms of both the absolute number of signatures and the geographic distribution of signatures.[1]

{¶ 8} On February 29, 2016, OMA commenced the present action. The challenge alleged four defects in the part-petitions that OMA claims should cause them to be discounted in their entirety:

(1)  Some petition circulators allegedly listed nonresidential addresses as their permanent addresses, in violation of R.C. 3501.38(E)(1).

(2)  Contractors allegedly crossed out signatures on part-petitions, in violation of R.C. 3519.06(C).

(3)  More than 1,400 part-petitions allegedly bear false circulator statements because they include fewer signatures than the circulator attested to witnessing, in violation of R.C. 3501.38(E) and 3519.06(D).

(4)  Five ineligible felons allegedly circulated part-petitions, in violation of R.C. 2961.01(B).

---

[1] To qualify an initiative for the ballot, supporters must submit petitions signed by "three percentum" of the electors. Article II, Section 1b, Ohio Constitution. In addition, the petitions must contain a designated number of signatures from electors in at least one-half of Ohio's 88 counties. Article II, Section 1g, Ohio Constitution.

OMA requested an "order and/or judgment declaring" the part-petitions and signatures thereon invalid and an "order and/or judgment" that the petition failed to meet the requirements of Section 1b.

{¶ 9} Booth filed an answer on March 9, 2016, and on March 30, 2016, a motion for judgment on the pleadings as to all claims based on lack of jurisdiction or, in the alternative, judgment on the pleadings as to the signature-deletion and circulator-statement claims. OMA filed a memorandum in opposition on April 6, 2016. On April 11, 2016, Husted filed his motion for leave to respond. Husted's proffered memorandum opposes Booth's arguments for partial judgment on the pleadings but does not discuss the jurisdictional question.

*Standard of Review*

{¶ 10} The Ohio Rules of Civil Procedure apply to actions brought pursuant to Section 1g, except insofar as they conflict with this court's rules of practice. S.Ct.Prac.R. 14.01(C)(2). When considering a Civ.R. 12(C) motion for judgment on the pleadings, a court must construe the material allegations in the complaint, along with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true. *Rayess v. Educational Comm. for Foreign Med. Graduates*, 134 Ohio St.3d 509, 2012-Ohio-5676, 983 N.E.2d 1267, ¶ 18. Judgment is proper only if it appears beyond doubt that the nonmoving party can prove no set of facts entitling it to relief. *Id*.

*Jurisdictional Arguments*

{¶ 11} OMA's challenge cites Article II, Section 1g of the Ohio Constitution as the source of this court's jurisdiction to hear its petition-signature challenge. Booth argues that there is no cause of action under Section 1g to challenge signatures on a Section 1b petition that asks the General Assembly to adopt a statute.

{¶ 12} Article II, Section 1g provides, "The Ohio supreme court shall have original, exclusive jurisdiction over all challenges made to petitions and signatures

4

upon such petitions under this section." The language of Section 1g is broad and unequivocal: it confers upon this court original exclusive jurisdiction to hear all petition-signature challenges.

{¶ 13} Booth contends that challenges to petitions under Article II, Section 1b proposing a statute for the General Assembly's adoption do not fall within the scope of Section 1g. According to Booth, the reference in Section 1g to "[a]ny initiative, supplementary, or referendum petition" refers only to Article II, Section 1a initiative petitions proposing constitutional amendments, Section 1b "supplementary" petitions to place proposed statutes on the ballot, and Article II, Section 1c referendum petitions to prevent statutes from taking effect. But the constitutional language does not support that interpretation.

{¶ 14} Moreover, a ruling that challenges to Section 1b proposal petitions are outside the scope of Section 1g would lead to absurd results. Section 1g is the constitutional authority for a number of fundamental petition rules and requirements, including the authorization of part-petitions, the requirement of a circulator's statement, the requirement that the petition contain the complete title and text of the proposed law, and the mandates that signers must be electors and must sign in ink. Article II, Section 1g, Ohio Constitution. To say that Section 1g's grant of jurisdiction does not encompass a challenge to a Section 1b proposal petition is to say that none of those requirements apply to such petitions. This cannot have been the intention of the drafters of Section 1g.

{¶ 15} For these reasons, we hold that we have original jurisdiction over this petition challenge pursuant to Article II, Section 1g of the Ohio Constitution. We therefore deny the request for judgment on the pleadings premised on Booth's assertion that this court lacks jurisdiction.

*Alternative Arguments*

{¶ 16} In the alternative, Booth seeks judgment on the pleadings as to two of OMA's claims regarding alleged petition defects. Specifically, Booth argues

that as a matter of law, the overcounting of signatures and the crossing out of signatures do not warrant invalidating the entire part-petition and that as to those claims, it is therefore beyond doubt that OMA can prove no set of facts entitling it to the relief it seeks, i.e., invalidation of the part-petitions.

*False Circulator Statements*

{¶ 17} OMA alleges in its challenge that more than 1,400 part-petitions contain false circulator statements because the circulators claim to have witnessed more signatures than actually appear on the face of the petition. Each part-petition had space for a maximum of 28 signatures. But OMA's challenge alleges that "even though most part-petitions did not have 28 signatures, circulation companies * * * instructed the circulators to write the number '28' in the circulator's statement." OMA contends that these part-petitions should be invalidated due to the overcounting. Booth, on the other hand, argues that part-petitions may never be rejected on the basis of an overcount, as a matter of law.

{¶ 18} R.C. 3501.38(E)(1) requires petition circulators to indicate the number of signatures on each petition paper and to sign an attestation that they personally witnessed each signature. A part-petition is not "properly verified" if it appears that the circulator's statement is false in any respect. R.C. 3519.06(D); *State ex rel. Spadafora v. Toledo City Council*, 71 Ohio St.3d 546, 549, 644 N.E.2d 393 (1994).[2]

{¶ 19} The requirement that a circulator state the number of signatures she or he personally witnessed "is a protection against signatures being added later." *State ex rel. Loss v. Lucas Cty. Bd. of Elections*, 29 Ohio St.2d 233, 234-235, 281 N.E.2d 186 (1972) (board of elections did not abuse its discretion or act contrary to

---

[2] Booth's motion also gives rise to a dispute among the parties regarding whether the "statement" referred to throughout R.C. 3519.06 refers *only* to the circulator's statement or to the contents of the entire part-petition. Our resolution of the motion makes it unnecessary to resolve that question at this stage of the proceedings.

law in invalidating petition when the space for the circulator to write the total number of signatures witnessed was left blank). In cases in which the circulator's statement slightly *undercounts* the signatures, this court has ordered the entire part-petition counted, so long as there is no indication of fraud or material misrepresentation. *State ex rel. Curtis v. Summit Cty. Bd. of Elections*, 144 Ohio St.3d 405, 2015-Ohio-3787, 44 N.E.3d 261, ¶ 8; *State ex rel. Schwarz v. Hamilton Cty. Bd. of Elections*, 173 Ohio St. 321, 323, 181 N.E.2d 888 (1962). Only when the circulator *knowingly* submits an undercount has the court invalidated the entire part-petition. *See, e.g.*, *Rust v. Lucas Cty. Bd. of Elections*, 108 Ohio St.3d 139, 2005-Ohio-5795, 841 N.E.2d 766, ¶ 13-14.

{¶ 20} In arguing that an overcount petition may never be rejected, Booth cites *State ex rel. Citizens for Responsible Taxation v. Scioto Cty. Bd. of Elections*, 65 Ohio St.3d 167, 602 N.E.2d 615 (1992). The circulator statements in that case overstated the number of signatures because circulators had deleted signatures at the request of the board of elections. Under those facts, the court was willing to overlook the discrepancy if the error did not promote fraud. *Id.* at 172-173. But *Citizens for Responsible Taxation* did not hold that an overcount can *never* promote fraud.

{¶ 21} In this case, OMA alleges that circulators wrote "28" on each part-petition at the outset and then submitted some part-petitions with fewer than 28 signatures on them. If that is true, there is at least a question as to how many signatures the circulators actually witnessed, if any. The validity of the part-petitions therefore depends on specific facts that are in dispute. For this reason, judgment on the pleadings is not appropriate as to OMA's circulator-statement claim.

*Signature Deletions*

**{¶ 22}** The same analysis informs our resolution of Booth's other argument for partial dismissal. OMA alleges that some part-petitions must be invalidated in their entirety because contractors hired by Booth crossed out some signatures.

**{¶ 23}** OMA cites R.C. 3501.38(G) and (H) as legal authority to invalidate these part-petitions. R.C. 3501.38(G) affirmatively authorizes a petition circulator to strike any signature before filing the petition. R.C. 3501.38(H) authorizes a petition signer or the signer's "attorney in fact" to remove the signer's signature before the petition is filed. Because the Revised Code expressly authorizes only these parties to strike signatures, OMA reasons, the Code implicitly forbids anyone else from deleting a signature.

**{¶ 24}** We also cannot at this point adopt a blanket rule, as urged by Booth, that a pattern of unauthorized deletions can never, under any circumstances, call into question the validity of an entire part-petition. Because resolution of this claim depends on the facts submitted, we deny partial judgment on the pleadings as to it as well.[3]

### Conclusion

**{¶ 25}** For the reasons indicated above, we grant Husted's motion for leave and we deny Booth's motion for judgment on the pleadings.

Motion for judgment on the pleadings denied.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, KENNEDY, and FRENCH, JJ., concur.

PFEIFER, J., dissents with an opinion that O'NEILL, J., joins.

O'NEILL, J., dissents with an opinion.

---

[3] Alternatively, OMA suggests that these deletions render the circulator statements false, in violation of R.C. 3519.06(D). We note that this assertion is contradicted in part by the allegation in OMA's own challenge that according to at least some of the circulators involved, "there were no interlineations or struck-out signatures present when the circulators submitted their part-petitions."

_____

**PFEIFER, J., dissenting.**

{¶ 26} I would dismiss this case because this court lacks jurisdiction. This court has original, exclusive jurisdiction over challenges made under Article II, Section 1g of the Ohio Constitution to petitions and signatures on petitions. Such challenges are expedited challenges, arising late in the process, subject to the accelerated calendar set forth in Article II, Section 1g. Article II, Section 1g is the sole source of jurisdiction cited in relators' complaint. However, a challenge to a proposal petition transmitted to the General Assembly pursuant to Article II, Section 1b cannot be brought under Article II, Section 1g because Article II, Section 1b proposal petitions have their own, incompatible timetable.

{¶ 27} In addition, relators' complaint seeks a declaratory judgment, which, as a rule, this court lacks jurisdiction to provide. *State ex rel. Ministerial Day Care Assn. v. Zelman*, 100 Ohio St.3d 347, 2003-Ohio-6447, 800 N.E.2d 21, ¶ 22.

{¶ 28} Accordingly, I dissent.

O'NEILL, J., concurs in the foregoing opinion.

_____

**O'NEILL, J., dissenting.**

{¶ 29} Respectfully, I must dissent. There is no possibility that this matter is going to be on the November 2016 ballot, and I would suggest that all parties take a step back, take a deep breath, and consider the chaos that is about to ensue.

{¶ 30} Article II, Section 1b of the Ohio Constitution describes a two-step initiative process by which citizens may propose the passage of a new statute. The process begins with the circulation of a petition asking the General Assembly to enact the proposed statute. Article II, Section 1b of the Ohio Constitution mandates that such a petition be submitted to the secretary of state and, along with verified signatures, be forwarded to the General Assembly not less than ten days before the commencement of a legislative session.

**{¶ 31}** The petitions in this case, properly verified by the secretary of state, were transmitted to the General Assembly a full month after the session began. It appears that all parties involved are willing, at this point, to ignore the failure to meet this small constitutional requirement. I am not.

**{¶ 32}** It is elementary constitutional law that a lack of jurisdiction can be raised at any time, even after judgment. It would do a fundamental disservice to the voters of Ohio to permit this matter to go forward and to cause the expenditure of millions of dollars, only to be dismissed in August or September. I dissent.

_____

Bricker & Eckler, L.L.P., Kurtis A. Tunnell, Anne Marie Sferra, Nelson M. Reid, and James P. Schuck, for relators.

McTigue & Colombo, L.L.C., Donald J. McTigue, J. Corey Colombo, and Derek S. Clinger, for respondents William S. Booth, Daniel L. Darland, Tracy L. Jones, and Latonya D. Thurman.

Michael DeWine, Attorney General, Steven T. Voigt, Senior Assistant Attorney General, and Brodi J. Conover, Assistant Attorney General, for respondent Ohio Secretary of State Jon Husted.

_____