[Cite as *Hinkle v. L Brands, Inc.*, 2021-Ohio-4187.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| James H. Hinkle et al., | : | |
| Plaintiffs-Appellants, | : | |
| | | No. 21AP-80 |
| v. | : | (C.P.C. No. 20CV-7263) |
| L Brands, Inc. World Headquarters, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on November 23, 2021

**On brief:** *James H. Hinkle*, pro se. **Argued:** *James H. Hinkle.*

**On brief:** *Vorys, Sater, Seymour and Pease LLP*, and *George L. Stevens*, for appellee. **Argued:** *George L. Stevens.*

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Plaintiffs-appellants, James H. Hinkle ("Hinkle") and Stephanie Marshall ("Marshall," or collectively "appellants"), appeal from an order of the Franklin County Court of Common Pleas granting the Civ.R. 12(C) motion of defendant-appellee, L Brands, Inc. World Headquarters. For the following reasons, we affirm the judgment.

**I. FACTS AND PROCEDURAL HISTORY**

{¶ 2} In August 2020, appellants were employed as seasonal workers by appellee at its Reynoldsburg, Ohio distribution center. Because of the COVID-19 pandemic, appellee set up checkpoints through which employees and visitors had to pass to access the distribution center complex. At the checkpoints, employees and visitors remained in their

cars and were required to wear masks as checkpoint employees took their temperatures with a no-touch thermometer.

{¶ 3} Appellants' complaint alleged that one of appellee's checkpoint employees repeatedly created problems for them. In late September 2020, this checkpoint employee " 'blew up,' was yelling, acting belligerent." (Nov. 9, 2020 Compl. at 1.) Appellants requested a supervisor and were permitted to pass through the checkpoint. Thereafter, appellants attempted to avoid that checkpoint employee.

{¶ 4} Sometime prior to October 30, 2020, Hinkle's employment with appellee ended but he continued to drive Marshall to and from work. On October 30, 2020, Hinkle alleged that he approached the checkpoint and put on a mask.[1] The same checkpoint employee who had previously blown up at them, again "had a problem." *Id.* Hinkle requested a supervisor and was told a supervisor was unavailable, so he requested a police officer. Hinkle alleged that he had to request a police officer three times and finally the checkpoint employee told him, " 'Move your car over there, [jackass].' " *Id.* When a police officer arrived, Hinkle alleged that he again put on his mask. The checkpoint employee approached Hinkle to take his temperature but acted like he was going to hit Hinkle. *Id.* The police officer asked appellants where Marshall worked, and the checkpoint employee answered the question, leading Hinkle to believe that the checkpoint employee was stalking Marshall. *Id.* at 2. While the police officer had Hinkle's driver's license, the checkpoint employee spoke to the police officer leading Hinkle to believe that the checkpoint employee was attempting to obtain his private information. *Id.* at 2. The police officer gave Hinkle a criminal trespass warning.

{¶ 5} Apparently, because of this incident, Marshall decided to call off work instead of quitting "to resolve the issue." *Id.* Following "calls back and forth between [Marshall] and Human Resources," appellee "let her go as a result of their investigation." *Id.*

{¶ 6} Appellants, acting pro se, filed a complaint in the Franklin County Court of Common Pleas against appellee.[2] Based on the claims listed on the first page of the

---

[1] Appellee asserted in its answer that the confrontation occurred because Hinkle refused to put on a mask. However, since we are reviewing the grant of a Civ.R. 12(C) motion, we construe the material allegations of the complaint as true and construe all reasonable inferences in favor of the nonmoving party.

[2] Appellants also sued Sun Capital Parters, Inc., but subsequently dismissed this party pursuant to Civ.R. 41(A).

complaint, appellants alleged three claims: duress, harassment, and wrongful termination. Appellee filed a Civ.R. 12(C) motion for judgment on the pleadings, or in the alternative, a motion for a more definite statement pursuant to Civ.R. 12(E). The trial court granted appellee's motion for judgment on the pleadings.

{¶ 7} Appellants filed a timely notice of appeal. Appellants did not specifically set out assignments of error but presented "Grounds for appeal," which we interpret as assignments of error, as follows:

> [1.] Defense brought up unrelated information on a plaintiff in order to hinder this case.
>
> [2.] The judge in the case in the lower courts never stated the "Good Cause" shown to dismiss the case. However, the motion was in reference to was supposedly not filing our response within a certain time frame. So, I am arguing that the merits of the case outweigh the time line in which to respond.

(Sic passim.)

{¶ 8} For ease of analysis, we address appellants' assignments of error out of order. In their second assignment of error, appellants contend that the trial court never stated the "Good Cause" shown to dismiss the case. We interpret this assignment of error as alleging that the trial court erred in granting appellee's Civ.R. 12(C) motion.[3]

## II. STANDARD OF REVIEW

{¶ 9} In reviewing a Civ.R. 12(C) motion for judgment on the pleadings, a court must construe the material allegations of the complaint and all reasonable inferences drawn from those allegations in favor of the nonmoving party. *Ohio Mfrs.' Assn. v. Ohioans for Drug Price Relief Act*, 147 Ohio St.3d 42, 2016-Ohio-3038, ¶ 10. A court will grant the motion if it finds that, beyond a doubt, the nonmoving party can prove no set of facts in support of its claim for relief. *Id.* " ' Thus, Civ.R. 12(C) requires a determination that no material factual issues exist and that the movant is entitled to judgment as a matter of law.' " *Rayess v. Educational Comm. for Foreign Med. Graduates*, 134 Ohio St.3d 509, 2012-

---

[3] This assignment of error also suggests in part that the trial court's grant of appellee's Civ.R. 12(C) motion was based on appellants' failure to timely file an opposing memorandum and not on the merits of the motion. The record reflects that appellants' response to appellee's Civ.R. 12(C) motion was filed several days late. However, nothing in the trial court's decision indicates it did not consider appellants' response or that it did not address the merits of the motion.

Ohio-5676, ¶ 18, quoting *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996). Because the review of a trial court's ruling on a motion for judgment on the pleadings presents only questions of law, appellate courts review such a ruling de novo. *Rayess* at ¶ 18. In reviewing a motion for judgment on the pleadings, a court must remain mindful that a plaintiff need not prove its case at the pleading stage. *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 144-45 (1991).

{¶ 10} Here, appellants asserted claims for duress, harassment, and wrongful termination. Construing all material allegations in their complaint and all reasonable inferences in appellants' favor, we agree with the trial court that appellee is entitled to judgment as a matter of law on these claims.

### A. Duress

{¶ 11} Assuming without deciding that Ohio law recognizes an independent cause of action for duress,[4] there are three elements common to all situations where duress has been found to exist: " ' "(1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party. * * * The assertion of duress must be proven to have been the result of the defendant's conduct and not by the plaintiff's necessities." ' " (Emphasis omitted.) *Blodgett v. Blodgett*, 49 Ohio St.3d 243, 246 (1990), quoting *Urban Plumbing & Heating Co. v. United States*, 408 F.2d 382, 389-90 (1969), quoting *Fruhauf Southwest Garment Co. v. United States*, 111 F.Supp. 945, 951 (1953).

{¶ 12} In this case, appellants alleged that they were involved in two incidents with one of appellee's checkpoint employees. During the first incident, the checkpoint employee " 'blew up,' was yelling, acting belligerent." (Compl. at 1.) During the second incident, the checkpoint employee called Hinkle a "jackass," acted like he was going to hit Hinkle as he took Hinkle's temperature with a no-touch thermometer, spoke to the police officer after Hinkle gave the officer his driver's license and told the police officer where Marshall worked. *Id.* at 2. Following the second incident, appellants voluntarily exited the premises after being issued a criminal trespass warning. There are no allegations that appellants

---

[4] Civ.R. 8(C) lists duress as an affirmative defense.

were compelled or coerced to do anything. Appellants' allegations, taken as true, do not support a claim for duress.

**B. Harassment**

{¶ 13} Relying upon these same factual allegations, appellants also purport to allege a claim for harassment. In the employment context, harassment can constitute a discriminatory practice. R.C. 4112.02(A) prohibits an employer from discriminating against an employee on the basis of their "race, color, religion, sex, military status, national origin, disability, age or ancestry." Only Marshall could raise an employment-related harassment claim based on both incidents because Hinkle was no longer employed by appellee when the second incident occurred.

{¶ 14} Appellants did not allege that the harassment they experienced from appellee's checkpoint employee was based upon any protected class status. Harassment does not constitute a discriminatory practice under R.C. 4112.02(A) unless based on a protected classification. *Hampel v. Food Ingredients Specialties*, 89 Ohio St.3d 169, 184-85 (2000) ("R.C. 4112.02(A) does not reach disparate treatment on account of personal animosity; no matter how severe or pervasive the conduct, harassment does not constitute a discriminatory practice under R.C. 4112.02(A) unless based on a prohibited classification."). Nor do appellants' allegations support even an inference that the harassment was based upon a protected classification. Therefore, appellants' allegations do not support a claim for employment-related harassment discrimination.

{¶ 15} Nor do appellants' allegations support a hostile-environment sexual harassment claim. Such a claim requires facts demonstrating "(1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the 'terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment,' and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action." *Hampel* at paragraph two of the syllabus. Harassing conduct that is abusive, with no sexual element, can support a claim for sexual harassment if it is directed at an employee because of his or her sex. *Id.* at paragraph four of the syllabus.

{¶ 16} "To be actionable, the environment engendered by sexual harassment 'must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so.' " *Camp v. Star Leasing Co.*, 10th Dist. No. 11AP-977, 2012-Ohio-3650, ¶ 29, quoting *Faragher v. Boca Raton*, 524 U.S. 775, 787 (1998). To determine whether the workplace environment is hostile or abusive the court must look at the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; whether it unreasonably interferes with an employee's work performance." *Hampel* at 180.

{¶ 17} When the severe and pervasive standard is properly applied, it " 'filter[s] out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." ' " *Camp* at ¶ 30, quoting *Faragher* at 788, quoting *Lindemann & Kadue*, Sexual Harassment in Employment Law 175 (1992). "Antidiscrimination legislation is not intended to operate as a 'general civility code.' " *Id.*

{¶ 18} Here, the two incidents that appellants allege do not support a claim for hostile-environment sexual harassment. As to Hinkle, he was working for appellee only during the first incident when the checkpoint employee " 'blew-up,' was yelling, acting belligerent" as appellants drove through the checkpoint. This conduct is not sufficiently severe or pervasive to affect the terms, conditions, or privilege of employment. Nor is there any allegation or reasonable inference that this harassing conduct contained a sexual element or was based on Hinkle's or Marshall's sex.

{¶ 19} With respect to the second incident, none of the harassing conduct was directed at Marshall, and Hinkle did not work for appellee when this conduct occurred. Nor is there any allegation or reasonable inference that the harassing conduct contained a sexual element or was based on Marshall's sex. Therefore, appellants' allegations, taken as true, cannot support a claim for hostile-environment sexual harassment.

{¶ 20} Even if we were to generously interpret appellants' duress or harassment claims as alleging the tort of intentional infliction of emotional distress, the allegations are still insufficient. Appellants' complaint contains no allegation that appellants suffered an emotional injury. Nor does appellants' complaint describe the type of outrageous conduct

required to establish an intentional infliction of emotional distress claim. Courts have discussed the "outrageous" requirement for this tort as follows:

> Only conduct that is truly outrageous, intolerable and beyond the bounds of decency is actionable; persons are expected to be hardened to a considerable degree of inconsiderate, annoying and insulting behavior. *Petrarca v. Phar-Mor, Inc.*, Trumbell App. No. 2000-T-0121, 2001 Ohio 4320. Insults, foul language, hostile tempers, and even threats must sometimes be tolerated in our rough and tumble society. *Breitenstein v. City of Moraine* (Nov. 5, 1992), Montgomery App. No. 13375, 1992 Ohio App. LEXIS 5578.

*Strausbaugh v. Ohio Dept. of Transp.*, 150 Ohio App.3d 438, 2002-Ohio-6627, ¶ 15 (10th Dist.).

{¶ 21} Appellants did not allege conduct that is "severe or pervasive" or "outrageous" and "beyond the bounds of decency." Appellants' description of the first incident alleged only that the checkpoint employee " 'blew up,' was yelling, acting belligerent." (Compl. at 1.) Expressions of annoyance, frustration, and even some hostility because of measures taken to reduce the spread of COVID-19, and/or to real or perceived resistance to those measures may be regrettable but must be tolerated "in a rough and tumble society." *Strausbaugh* at ¶ 15. The conduct alleged during this first incident does not support a claim for intentional infliction of emotional distress.

{¶ 22} We reach this same conclusion with respect to the second incident. Calling Hinkle a "jackass" and demonstrating some hostility toward Hinkle while taking his temperature with a no-touch thermometer at a COVID-19 checkpoint is not conduct that is truly outrageous, intolerable, and beyond the bounds of decency, particularly when the alleged conduct took place in the presence of a police officer. Nor is there anything outrageous about the checkpoint employee speaking to the police officer or letting the police officer know where Marshall worked. These allegations do not support a claim for intentional infliction of emotional distress.

## C. Wrongful Termination

{¶ 23} Appellants' third claim for wrongful termination only applied to Marshall. Appellants alleged that Marshall was terminated from her seasonal position in appellee's shipping department. Appellants do not allege that Marshall's employment was governed

by a written employment agreement or was for a specific term. Therefore, it appears that Marshall was an at-will employee.

{¶ 24} "Traditionally, an employer could terminate the employment of any at-will employee for any cause, at any time whatsoever, even if the termination was done in gross or reckless disregard of the employee's rights." *Moore v. Impact Community Action*, 10th Dist. No. 12AP-1030, 2013-Ohio-3215, ¶ 7, citing *Collins v. Rizkana*, 73 Ohio St.3d 65, 67 (1995). However, Ohio law recognizes a public policy exception to the protections otherwise afforded to an employer under the employment-at-will doctrine. An at-will employee may state a claim for wrongful discharge in violation of public policy by alleging facts demonstrating that the employer's act of discharging him contravened a "clear public policy" based on statutes, or other sources such as the Ohio and United States Constitutions, administrative rules and regulations, and the common law. *Painter v. Graley*, 70 Ohio St.3d 377 (1994), paragraphs two and three of the syllabus.

{¶ 25} To assert a viable claim for wrongful discharge in violation of public policy, a plaintiff must establish each of the following elements:

> (1) that there exists a clear public policy that is manifested in a state or federal constitution, statute, or administrative regulation, or in the common law (the "clarity" element), (2) that dismissal of employees under circumstances like those involved in the plaintiff's dismissal would jeopardize that public policy (the "jeopardy" element), (3) that the plaintiff's dismissal was motivated by conduct related to the public policy (the "causation" element), and (4) that the employer lacked overriding legitimate business justification for the dismissal (the "overriding justification" element).

*Blackburn v. Am. Dental Ctrs.*, 10th Dist. No. 13AP-619, 2014-Ohio-5329, ¶ 14, citing *Collins* at 69-70.

{¶ 26} The first two elements of a claim for wrongful discharge in violation of public policy are questions of law to be determined by the court and the third and fourth elements are questions for the trier of fact. *Id.*, citing *Collins* at 70. Further, courts do not recognize a claim of mistreatment or harassment in violation of public policy. *Strausbaugh*, 150 Ohio App.3d 438, 2002-Ohio-6627 at ¶ 37.

{¶ 27} Here, appellants did not identify any public policy that is applicable to the facts alleged. Nor can we reasonably infer such a public policy from appellants' allegations.

Furthermore, appellants did not allege facts suggesting that Marshall's dismissal jeopardized any public policy. Therefore, we agree with the trial court that appellee is entitled to judgment as a matter of law on appellants' wrongful termination claim.

{¶ 28} For the foregoing reasons, appellants' second assignment of error is overruled.

{¶ 29} In their first "assignment of error," appellants contend that a police report describing the incident at issue should not have been included as an exhibit to appellee's answer because it included unrelated and prejudicial information about Hinkle. In response, appellee argues that the trial court could have granted appellee's Civ.R. 12(C) motion relying solely on the facts set forth in the complaint. Further, appellee contends that there is no indication that the exhibit factored into the trial court's decision or that it unfairly prejudiced appellants. We agree.

{¶ 30} There is no indication that the trial court relied on the police report in granting appellee's Civ.R. 12(C) motion. Nor do we consider it here. In reviewing a Civ.R. 12(C) motion, the material allegations of the complaint and all reasonable inferences drawn from those allegations are construed in appellants' favor as the nonmoving party. Our review has been confined to the allegations in appellants' complaint. Thus, appellants have demonstrated no prejudice from the attachment. Appellants' first assignment of error is overruled.

{¶ 31} Having overruled appellants' two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

LUPER SCHUSTER and JAMISON, JJ., concur.

———————————