[Cite as *McCarthy v. Lee*, 2022-Ohio-1033.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Kathleen McCarthy et al., | : | |
| Plaintiffs-Appellants, | : | |
| | : | No. 21AP-105 |
| v. | : | (C.P.C. No. 20CV-554) |
| Peter K. Lee, M.D. et al., | : | (ACCELERATED CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on March 29, 2022

**On brief:** *Beausay & Nichols Law Firm, T. Jeffrey Beausay,* and *Sara C. Nichols*, for appellants. **Argued:** *T. Jeffrey Beausay.*

**On brief:** *Baker & Hostetler, LLP, John H. Burtch*, and *Allison R. Thomas*, for appellees. **Argued:** *John H. Burtch.*

**Current counsel for appellees:** *FisherBroyles, LLP, Robert B. Graziano*, and *Michael R. Traven.*

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Plaintiffs-appellants, Kathleen and Brett McCarthy, appeal the February 26, 2021 decision and entry of the Franklin County Court of Common Pleas granting the motion for judgment on the pleadings filed by defendants-appellees, Peter K. Lee, M.D., OhioHealth Colon and Rectal Surgeons, and OhioHealth Physician Group. For the following reasons, we reverse in part and affirm in part.

**I. Facts and Procedural History**

{¶ 2} On January 21, 2020, appellants filed a complaint in the trial court. Appellants indicated in the complaint that this was a refiled case, with the original case

having been dismissed without prejudice on January 22, 2019.  Appellants' complaint contained three causes of action including medical negligence, wrongful death, and loss of consortium.  As stated in the complaint, appellants alleged that in October 2010, Kathleen McCarthy sought medical attention from her primary care physician due to issues including changes in the size of her stool, increasing gas, a drop in the location plane of the anal area, and blood and mucus in her stool.  Kathleen's family doctor referred her to Dr. Lee for evaluation.

{¶ 3}  On October 19, 2010, Dr. Lee conducted a physical examination, anoscopy, and rigid sigmoidoscopy on Kathleen.  As a result of the evaluation, Dr. Lee found Grade 1 hemorrhoids and ordered a colonoscopy. On February 2, 2011, Kathleen underwent a colonoscopy, which found mildly enlarged internal hemorrhoids but no other abnormalities.  Kathleen continued to experience symptoms but attributed her symptoms to her diet and age.

{¶ 4}  In early 2015, Kathleen became concerned due to an increase in the severity of her symptoms. As a result, Kathleen returned to Dr. Lee, who performed another anoscopy.  Dr. Lee allegedly concluded that Kathleen's symptoms were caused by Grade 1 hemorrhoids. Dr. Lee did not order another colonoscopy but, instead, recommended Kathleen increase her fiber and fluid intake.  Dr. Lee also recommended a hemorrhoid repair procedure, which Kathleen declined.

{¶ 5}  On November 18, 2016, Kathleen underwent a physical screening in connection with an application for insurance coverage. Upon learning that she had been denied coverage under the insurer's premiere rate based on her test results from the physical screening, Kathleen requested the specific results of the tests.  In January 2017, Kathleen learned her test results revealed she had abnormally high AST and ALT liver enzyme levels.  On February 2, 2017, Kathleen returned to her primary care physician who ordered a liver ultrasound, which was performed on February 16, 2017.  When the liver ultrasound failed to identify the cause of the abnormal liver enzyme levels, Kathleen's primary care physician referred Kathleen to Ohio Gastroenterology Group.

{¶ 6}  On March 6, 2017, Kathleen was examined by Dr. Kiran Bidari of Ohio Gastroenterology Group, who ordered an endoscopy and colonoscopy.  On April 4, 2017,

Dr. David Wenzke performed the procedures, discovering a mass in Kathleen's colon. On April 12, 2017, Kathleen was informed that the mass in her colon was cancerous.

{¶ 7} On April 24, 2017, surgeons at Riverside Methodist Hospital performed a colectomy on Kathleen and removed an invasive, moderate to poorly differentiated adenocarcinoma tumor. However, at that point, cancer had already spread to Kathleen's lymph nodes. From June through December 2017, Kathleen received 12 rounds of chemotherapy. CT scans showed suspicious areas of possible metastases. On April 17, 2018, a PET scan revealed further lymph node involvement.

{¶ 8} On May 8, 2018, Kathleen had surgery to remove cancerous lymph nodes at the intersection of the aorta and right iliac artery and other cancerous masses. At the time of the filing of the complaint, Kathleen had incurable stage IV colon cancer and was continuing to receive chemotherapy.

{¶ 9} Appellants alleged in their complaint that appellees fell below the accepted standard of care by failing to order a colonoscopy in 2015 when Kathleen experienced an increase in the severity of her symptoms and sought medical care from Dr. Lee. Appellants further alleged appellees were negligent for failing to timely diagnose her colon cancer, resulting in the progression of the cancer to stage IV without treatment. As a result of appellees' alleged negligence, Kathleen experienced and would continue to experience pain, mental anguish, extreme emotional distress, medical costs and treatment, loss of income and earning capacity, and the loss of enjoyment of life and the ability to perform customary activities. Appellants stated in the complaint that they were necessarily raising a claim for wrongful death in light of defenses raised by appellees in the previously dismissed case relating to the statute of repose.

{¶ 10} On the same date as the filing of the complaint, appellants also filed a motion pursuant to Civ.R. 10(D)(2) seeking an extension of time to file an affidavit of merit. On February 14, 2020, appellees filed an answer.

{¶ 11} On June 16, 2020, the trial court granted appellants' unopposed January 21, 2020 motion for extension of time to file an affidavit of merit. On July 30, 2020, appellants filed a second motion pursuant to Civ.R. 10(D)(2) for an extension of time to file an affidavit of merit. On August 12, 2020, appellees filed a memorandum in opposition to appellants' July 30, 2020 motion. On August 24, 2020, the trial court granted appellants' July 30,

2020 motion. On October 1, 2020, appellants filed an affidavit of merit in support of their complaint.

{¶ 12} On January 22, 2021, appellees filed a motion for judgment on the pleadings pursuant to Civ.R. 12(C). Appellees contended the claims in appellants' complaint were properly characterized as medical claims, and were, therefore, subject to the statute of repose under R.C. 2305.113(C). Appellees asserted that the statute of repose applied in this case to bar appellants' claims because the complaint was filed more than four years after the acts or omissions giving rise to the claims and the savings statute under R.C. 2305.19 did not operate as an exception to the statute of repose.

{¶ 13} On January 28, 2021, appellants filed a motion to hold appellees' January 22, 2021 motion for judgment on the pleadings in abeyance pending the outcome of reconsideration following the Supreme Court of Ohio's decision in *Wilson v. Durrani*, 164 Ohio St.3d 419, 2020-Ohio-6827. On February 3, 2021, appellees filed a memorandum in opposition to appellants' January 28, 2021 motion to hold in abeyance. On February 5, 2021, appellants filed a memorandum in opposition to appellees' motion for judgment on the pleadings. On February 26, 2021, the trial court filed a decision and entry denying appellants' January 28, 2021 motion to hold in abeyance and granting appellees' January 22, 2021 motion for judgment on the pleadings.

## II. Assignment of Error

{¶ 14} Appellants appeal and assign the following sole error for our review:

> The trial court erred in determining that the medical statute of repose (2305.113(C)) applies to wrongful death claims.

## III. Analysis

{¶ 15} In their sole assignment of error, appellants argue the trial court incorrectly applied the medical statute of repose under R.C. 2305.113(C) to their wrongful death claim in granting appellees' motion for judgment on the pleadings.

### A. Standard of Review

{¶ 16} Pursuant to Civ.R. 12(C), "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A court considering a motion under Civ.R. 12(C) must construe the material allegations in the complaint and all reasonable inferences to be drawn by the same in favor of the nonmoving

party as true. *Ohio Manufacturers' Assn. v. Ohioans for Drug Price Relief Act*, 147 Ohio St.3d 42, 2016-Ohio-3038, ¶ 10. Viewing the allegations in such light, the court may only grant a motion under Civ.R. 12(C) where it finds no material factual issues exist and the movant is entitled to judgment as a matter of law. *Hinkle v. L Brands, Inc. World Headquarters*, 10th Dist. No. 21AP-80, 2021-Ohio-4187, ¶ 9. Thus, a motion under Civ.R. 12(C) " 'tests the allegations of the complaint and presents a question of law.' " *Jackson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 19AP-621, 2020-Ohio-1518, ¶ 11, quoting *Zhelezny v. Olesh*, 10th Dist. No. 12AP-681, 2013-Ohio-4337, ¶ 9. *See Lytal v. Crawl for Cancer, Inc.*, 10th Dist. No. 17AP-771, 2018-Ohio-2017, ¶ 8, citing *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996), citing *Peterson v. Teodosio*, 34 Ohio St.2d 161, 166 (1973) (stating that a court is permitted to consider both the complaint and answer in resolving the question of law presented by a Civ.R. 12(C) motion).

{¶ 17} As a trial court's decision on a motion under Civ.R. 12(C) turns on the resolution of a question of law, we apply a de novo standard of review on appeal. *Rayess v. Educational Comm. for Foreign Med. Graduates*, 134 Ohio St.3d 509, 2012-Ohio-5676, ¶ 18; *Welther v. Plageman*, 10th Dist. No. 19AP-774, 2021-Ohio-713, ¶ 6. De novo appellate review means the court of appeals conducts an independent review, without deference to the trial court's decision. *Bayview Loan Servicing, L.L.C. v. Humphreys*, 10th Dist. No. 20AP-396, 2021-Ohio-4324, ¶ 18, citing *Wiltshire Capital Partners v. Reflections II, Inc.*, 10th Dist. No. 19AP-415, 2020-Ohio-3468, ¶ 12.

**B. Applicable Law**

{¶ 18} This case involves issues arising from the interaction of statutes of limitation, statutes of repose, and the savings statute with claims for wrongful death and medical malpractice. Our court recently addressed these issues in a similar case involving the application of the statute of repose for medical claims to claims for wrongful death and medical malpractice. *Everhart v. Coshocton Cty. Mem. Hosp.*, 10th Dist. No. 21AP-74, 2022-Ohio-629. Before turning to our resolution of that case and its application to the facts before us, we briefly review the applicable statutory provisions and caselaw.

**1. Distinctions Between Claims for Wrongful Death and Medical Malpractice**

**{¶ 19}** "The wrongful death action is a special statutory action which does not exist at common law." *Klema v. St. Elizabeth's Hosp. of Youngstown*, 170 Ohio St. 519, 524 (1960). Wrongful death claims are governed by R.C. Chapter 2125. R.C. 2125.01, which defines actions for wrongful death, provides in pertinent part:

> When the death of a person is caused by wrongful act, neglect, or default which would have entitled the party injured to maintain an action and recover damages if death had not ensued, the person who would have been liable if death had not ensued, or the administrator or executor of the estate of such person, as such administrator or executor, shall be liable to an action for damages, notwithstanding the death of the person injured and although the death was caused under circumstances which make it aggravated murder, murder, or manslaughter.

In order to establish a wrongful death claim based on a theory of negligence, a plaintiff must demonstrate: " '(1) the existence of a duty owing to plaintiff's decedent, *i.e.*, the duty to exercise ordinary care, (2) a breach of that duty, and (3) proximate causation between the breach of duty and the death.' " *Amoako-Okyere v. Church of the Messiah United Methodist Church*, 89 Ohio App.3d 17, 2015-Ohio-3841, ¶ 35 (10th Dist.), quoting *Bennison v. Stillpass Transit Co.*, 5 Ohio St.2d 122 (1966), paragraph one of the syllabus.

**{¶ 20}** Unlike claims for wrongful death, which are statutory in nature, " '[m]edical malpractice claims have long been recognized at common law.' " *Stuck v. Miami Valley Hosp.*, 2d Dist. No. 28233, 2020-Ohio-305, ¶ 14, quoting *LaValley v. Riverside Methodist Hosp.*, 10th Dist. No. 77AP-103 (Sept. 29, 1977). *See Thompson v. Community Mental Health Ctrs. of Warren Cty.*, 71 Ohio St.3d 194, 195 (1994); *Chilton-Clark v. Fishel*, 10th Dist. No. 16AP-76, 2016-Ohio-7135, ¶ 9, fn. 1. Similar to the requirements for a wrongful death claim based on negligence, in order to establish a claim for medical malpractice, a plaintiff must demonstrate: "(1) the existence of a standard of care recognized within the medical community, (2) the breach of that standard of care by defendant, and (3) proximate cause between the breach of the standard of care and the injury." *Jenkins v. Karl HC, LLC*, 10th Dist. No. 19AP-572, 2020-Ohio-1137, ¶ 11, citing *Adams v. Kurz*, 10th Dist. No. 09AP-1081, 2010-Ohio-2776, ¶ 11, citing *Williams v. Lo*, 10th Dist. No. 07AP-949, 2008-Ohio-2804, ¶ 11.

{¶ 21} The Supreme Court, recognizing the distinctions between actions for medical malpractice and wrongful death, has stated:

> Although originating in the same wrongful act or neglect, the two claims are quite distinct, no part of either being embraced in the other. One is for the wrong to the injured person and is confined to his personal loss and suffering before he died, while the other is for the wrong to the beneficiaries and is confined to their pecuniary loss through his death. One begins where the other ends, and a recovery upon both in the same action is not a double recovery for a single wrong but a single recovery for a double wrong.

*Klema* at 521, quoting *St. Louis, Iron Mountain & Southern Ry. Co. v. Craft*, 237 U.S. 648, 658 (1915). *See Koler v. St. Joseph Hosp.*, 69 Ohio St.2d 477, 479 (1982). Furthermore, the Supreme Court has held that the statute authorizing an action for wrongful death "creates a new cause or right of action distinct and apart from the right of action which the injured person might have had and upon the existence of which such new right is conditioned." *Karr v. Sixt*, 146 Ohio St. 527 (1946), paragraph one of the syllabus.

### 2. Statutes of Limitations, Statutes of Repose, and Saving Statutes

{¶ 22} "Statutes of limitations and statutes of repose share a common goal of limiting the time during which a putative wrongdoer must be prepared to defend a claim, but they operate differently and have distinct applications." *Wilson* at ¶ 8, citing *Antoon v. Cleveland Clinic Found.*, 148 Ohio St.3d 483, 2016-Ohio-7432, ¶ 11, citing *CTS Corp. v. Waldburger*, 573 U.S. 1, 7 (2014). *See Mominee v. Scherbarth*, 28 Ohio St.3d 270, 290 (1986), fn. 17. Statutes of limitations set forth " 'a time limit for suing in a civil case, based on the date when the claim accrued (as when the injury occurred or was discovered).' " *Wilson* at ¶ 9, quoting *Black's Law Dictionary* 1707 (11th Ed.2019). Statutes of limitation are designed to encourage a plaintiff's diligent prosecution of known claims. *Id.* at ¶ 10, citing *CTS Corp* at 8, citing *Black's Law Dictionary* 1546 (9th Ed.2009).

{¶ 23} On the other hand, statutes of repose bar " 'any suit that is brought after a specified time since the defendant acted * * * even if this period ends before the plaintiff has suffered a resulting injury.' " *Wilson* at ¶ 9, quoting *Black's Law Dictionary* 1707 (11th Ed.2019). Statutes of repose are designed to entitle a defendant to be free from fear of prosecution of a claim following a period of time prescribed by the legislature. *See id.* at ¶ 10, citing *California Pub. Emps. Retirement Sys. v. ANZ Secs., Inc.*, ___U.S.___, 137

S.Ct. 2042, 2049 (2017); *Antoon* at ¶ 18, quoting *Ruther v. Kaiser*, 134 Ohio St.3d 408, 2012-Ohio-5686, ¶ 19 (stating that " '[t]he statute of repose exists to give medical providers certainty with respect to the time within which a claim can be brought and a time after which they may be free from the fear of litigation' ").

{¶ 24} Unlike statutes of limitation and statutes of repose, savings statutes are designed to extend the time for a plaintiff to file an action. "Generally, a saving statute will provide that 'where an action timely begun fails in some manner described in the statute, other than on the merits, another action may be brought within a stated period from such failure.' " *Wilson* at ¶ 11, quoting Annotation, 6 A.L.R.3d 1043 (1966). Saving statutes are remedial in nature and "are intended to provide a litigant an adjudication on the merits." *Id.*, citing *Wasyk v. Trent*, 174 Ohio St. 525, 528 (1963).

{¶ 25} Having set forth the general principles underlying statutes of limitations, statutes of repose, and savings statutes, we turn to the specific statutory provisions at issue in this appeal. R.C. 2125.02(D), which sets forth the statute of limitations for wrongful death claims, provides that "a civil action for wrongful death shall be commenced within two years after the decedent's death," subject to certain specified exceptions. R.C. 2125.02(D)(1).

{¶ 26} R.C. 2305.113(A), which sets forth the statute of limitations for medical malpractice claims, provides in pertinent part that "an action upon a medical, dental, optometric, or chiropractic claim shall be commenced within one year after the cause of action accrued." R.C. 2305.113(C), which sets forth the statute of repose for medical malpractice claims, provides the following:

> (1) No action upon a medical, dental, optometric, or chiropractic claim shall be commenced more than four years after the occurrence of the act or omission constituting the alleged basis of the medical, dental, optometric, or chiropractic claim.
>
> (2) If an action upon a medical, dental, optometric, or chiropractic claim is not commenced within four years after the occurrence of the act or omission constituting the alleged basis of the medical, dental, optometric, or chiropractic claim, then, any action upon that claim is barred.

{¶ 27} As used in R.C. 2305.113, the term "medical claim" is defined as:

[A]ny claim that is asserted in any civil action against a physician, podiatrist, hospital, home, or residential facility, against any employee or agent of a physician, podiatrist, hospital, home, or residential facility, or against a licensed practical nurse, registered nurse, advanced practice registered nurse, physical therapist, physician assistant, emergency medical technician-basic, emergency medical technician-intermediate, or emergency medical technician-paramedic, and that arises out of the medical diagnosis, care, or treatment of any person.

R.C. 2305.113(E)(3). The statute further provides that a "medical claim" includes the following:

(a) Derivative claims for relief that arise from the medical diagnosis, care, or treatment of a person;

* * *

(c) Claims that arise out of the medical diagnosis, care, or treatment of any person or claims that arise out of the plan of care prepared for a resident of a home and to which both types of claims either of the following applies:

(i) The claim results from acts or omissions in providing medical care.

(ii) The claim results from the hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care, or treatment.

R.C. 2305.113(E)(3). R.C. 2305.113(E)(7) provides that "derivative claims for relief" include, but are not limited to, the following:

[C]laims of a parent, guardian, custodian, or spouse of an individual who was the subject of any medical diagnosis, care, or treatment, dental diagnosis, care, or treatment, dental operation, optometric diagnosis, care, or treatment, or chiropractic diagnosis, care, or treatment, that arise from that diagnosis, care, treatment, or operation, and that seek the recovery of damages for any of the following:

(a) Loss of society, consortium, companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, or education, or any other intangible loss that was sustained by the parent, guardian, custodian, or spouse;

(b) Expenditures of the parent, guardian, custodian, or spouse for medical, dental, optometric, or chiropractic care or treatment, for rehabilitation services, or for other care,

> treatment, services, products, or accommodations provided to the individual who was the subject of the medical diagnosis, care, or treatment, the dental diagnosis, care, or treatment, the dental operation, the optometric diagnosis, care, or treatment, or the chiropractic diagnosis, care, or treatment.

{¶ 28} Ohio's savings statute, R.C. 2305.19, provides in pertinent part:

> In any action that is commenced or attempted to be commenced * * *, if the plaintiff fails otherwise than upon the merits, the plaintiff * * * may commence a new action within one year after the * * * plaintiff's failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later.

Thus, if the action fails other than on the merits, "the savings statute 'may be used only once to invoke an additional one-year time period in which to refile an action.' " *Brownfield v. Krupman*, 10th Dist. No. 14AP-294, 2015-Ohio-1966, ¶ 10, quoting *Boggs v. Baum*, 10th Dist. No. 10AP-864, 2011-Ohio-2489, ¶ 30, citing *Hancock v. Kroger Co.*, 103 Ohio App.3d 266, 269 (10th Dist.1995).

### C. Analysis

{¶ 29} Here, appellants raise two arguments related to their claims for medical malpractice and wrongful death. With regard to their claim for medical malpractice, appellants argue the statute of repose is not a bar to the refiling of their medical malpractice claim under the savings statute. Appellants acknowledge that the Supreme Court in *Wilson* recently reached the opposite conclusion regarding the interaction between the statute of repose and the savings statute.

{¶ 30} Appellants did not set forth an assignment of error with regard to the medical malpractice claim, therefore we address the argument only to observe that *Wilson* would dispose of the same. In *Wilson*, the plaintiffs initially filed medical malpractice complaints within four years of the alleged malpractice, but voluntarily dismissed such complaints before refiling them in another county. The plaintiffs contended that, having voluntarily dismissed their claims pursuant to Civ.R. 41(A) and having thus failed otherwise than on the merits, they were entitled pursuant to R.C. 2305.19(A) to refile such claims within one year. The Supreme Court accepted review of the case to determine whether the savings statute operated as an exception to the statute of repose for medical claims. In considering this question, the Supreme Court stated that "exceptions to a statute of repose require 'a

particular indication that the legislature did not intend the statute to provide complete repose but instead anticipated the extension of the statutory period under certain circumstances,' as when the statute of repose itself contains an express exception." *Wilson* at ¶ 29, quoting *California Pub. Emps. Retirement Sys.* at 2050. Based on the "absence of an express incorporation of the Ohio saving statute as an exception in the medical statute of repose, the General Assembly's express incorporation of the savings statute as an exception to another statute of repose in R.C. Chapter 2305, and the general character of statutes of repose as providing an absolute temporal limit on a defendant's potential liability," the court found that the savings statute was not an exception to the bar on claims imposed by the statute of repose. *Wilson* at ¶ 37. The court held that "[e]xpiration of the statute of repose precludes the commencement, pursuant to the saving statute, of a claim that has previously failed otherwise than on the merits in a prior action." *Id.* at ¶ 38. As a result, the court concluded the plaintiffs' claims were barred by the statute of repose for medical claims pursuant to R.C. 2305.113(C).

{¶ 31} As appellants acknowledge, notwithstanding their arguments regarding the Supreme Court's holding in *Wilson*, we are bound to follow the precedent of the Supreme Court of Ohio. *See generally In re C.J.*, 10th Dist. No. 16AP-891, 2018-Ohio-931, ¶ 77; *In re W.W.E.*, 10th Dist. No. 15AP-167, 2016-Ohio-4552, ¶ 34; *Coniglio v. State Med. Bd. of Ohio*, 10th Dist. No. 07AP-298, 2007-Ohio-5018, ¶ 8. As a result, we would not find the trial court erred in dismissing appellants' medical malpractice claim pursuant to Civ.R. 12(C) because no material factual issues existed and appellees were entitled to judgment as a matter of law.

{¶ 32} Next, appellants argue that claims for medical malpractice and wrongful death are distinct and, as such, the statute of repose applies only to their claim for medical malpractice, not their claim for wrongful death. We recently resolved this question in our decision in *Everhart*. In that case, the trial court granted a motion for judgment on the pleadings because it found the plaintiff's wrongful death claim was a medical claim under R.C. 2305.113(E) and, consequently, was barred by the statute of repose. Reviewing the history of and differences between claims for wrongful death and medical malpractice, we found that a claim for "wrongful death is a separate and unique cause of action from other claims." *Everhart* at ¶ 16. We noted that R.C. 2125.02, which governs limitations on

wrongful death claims, did not provide a statute of repose for a wrongful death arising out of a medical claim. In discussing whether the statute of repose for medical claims in R.C. 2305.113(C) applied to a medical wrongful death claim, we noted that "[t]here is not a single reference to wrongful death in R.C. 2305.113." *Id.* at ¶ 25. Applying statutory canons of construction, we found the absence of reference to wrongful death in R.C. 2305.113 to be crucially important given the extensive list of claims included under "derivative claims for relief" pursuant to R.C. 2305.113(E)(7). Acknowledging the Supreme Court's holding in *Wilson*, we noted the court's holding was specific to the application of the savings statute to medical malpractice claims and had not been expanded to include Ohio's wrongful death statute. As a result, we held that the statute of repose for medical claims under R.C. 2305.113(C) did not apply to claims for wrongful death under R.C. Chapter 2125 and, therefore, concluded the trial court erred in finding the plaintiff was barred from pursuing her wrongful death claim. *Id.* at ¶ 51. *Compare Smith v. Wyandot Mem. Hosp.*, 3d Dist. No. 16-17-07, 2018-Ohio-2441, ¶ 32 (finding trial court did not err in dismissing estate's wrongful death action for failing to state a claim for which relief can be granted because the action was not filed within period provided by statute of repose for medical claims).

{¶ 33} In this case, the trial court found appellants' claims, including appellants' wrongful death claim, were medical claims as defined by R.C. 2305.113(E)(3). Therefore, the trial court found the statute of repose for medical claims under R.C. 2305.113(C) applied to bar appellants' wrongful death claim. Consistent with our decision in *Everhart*, we find that wrongful death claims under R.C. Chapter 2125 are not medical claims within the meaning of R.C. 2305.113. *Everhart* at ¶ 51. Therefore, we find the trial court erred in its February 26, 2021 decision and entry insofar as it applied the statute of repose for medical claims to appellants' wrongful death claim.

{¶ 34} Having found that appellants' claim for wrongful death is not barred by the medical claim statute of repose, on remand, we instruct the trial court to vacate that portion of its February 26, 2021 decision and entry which dismissed appellants' wrongful death claim pursuant to Civ.R. 12(C) on grounds of failure to comply with the statute of repose.

{¶ 35} Accordingly, we sustain appellants' sole assignment of error.

**IV. Conclusion**

{¶ 36} Having sustained appellants' sole assignment of error, we affirm in part and reverse in part the February 26, 2021 decision and entry granting appellees' motion for judgment on the pleadings, and remand this matter to the Franklin County Court of Common Pleas for proceedings consistent with law and this decision.

*Judgment affirmed in part;*
*reversed in part; and*
*cause remanded.*

KLATT and MENTEL, JJ., concur.

_____